PHOENIX INS. CO. v. HEATH et al.

No. 5709.   Decided October 10, 1936.   (61 P. [2d] 308.)

*Gustin & Richards,* of Salt Lake City, for appellant.
*Henry D. Moyle,* of Salt Lake City, for respondents.

FOLLAND, Justice.

Defendants, as agents for the plaintiff, issued a policy of fire insurance on the Roseland Dance Hall in Salt Lake City for $5,000. Plaintiff thereupon requested the defendants to reduce the policy to $2,500. Defendants wrote plaintiff requesting reconsideration of plaintiff's demand. Before any reduction in the policy was made, the dance hall burned down. Plaintiff paid the insured the full amount of the policy and brought this action to recover from defendants the sum of $2,500 because of their negligent failure to reduce the risk as requested. From a judgment in favor of defendants, plaintiff appeals.

The material facts are not in dispute. In plaintiff's instructions to agents is found the following provision:

"Cancel promptly when so requested, remembering that if agents fail to carry out instructions or act in excess of the authority given them, they render themselves personally liable to the company for any loss sustained."

The policy of insurance issued contains a provision that the policy may be canceled at any time "by the company by giving five days notice of such cancellation." Upon being advised of the issuance of the policy in question, plaintiff

addressed to defendants a letter dated November 5, 1932, containing the following:

"While this is a renewal of Protector policy No. 795490 we find that our reinsurance facilities this year are somewhat limited due to the fact that this classification has had such an unfavorable loss record and consequently reinsuring companies are not writing the class. Therefore, while we regret to disturb any of this liability we find it necessary to ask you to reduce the Protector's liability under the above policy to $2,500.00. We made a strenuous effort to take care of this liability here, but, as stated above, found this impossible.

"Thanking you for your good attention to this matter, we are."

The record does not disclose when this letter was received by the defendants at Salt Lake City, but after receipt thereof, and under date of November 13, 1932, defendants wrote to plaintiff the following:

"Regarding your letter of Nov. 5th. Re: Policy No. 797184. We are disappointed that you feel unable to keep the whole risk. Our business is small, so far, and we very much dislike starting to spread it about. We have taken every precaution to take good risks, and note with some little pride that fire losses paid us or any of our clients have been practically nil. The dance hall in question is a very high class place, with all fire precautions suggested for the safety of the building promptly taken; also a caretaker is on the place every hour of the day and night.

"We write you to ask you to reconsider your action and again see if you cannot place the whole amount as has been done the past several years."

Plaintiff replied to this letter under date of November 16, 1932, as follows:

"We have for acknowledgment your letter of the 13th concerning the reduction in the amount covered by the above policy. Before writing you previously requesting that this policy be reduced to $2,500.00 we used every effort here to secure the necessary reinsurance to avoid disturbing the policy, however, we were unable to do so owing to the fact that risks of this class have been practically prohibited by most companies. The reinsurance which we had last year on the previous policy is not now available to us and, consequently, we are carrying a net line greatly in excess of the amount prescribed by the company. In addition to this policy we also have $1,750.00 under two other policies giving us a total of $6,750.00.

"We surely regret the necessity of asking your assistance in this matter but under the circumstances there is nothing for us to do. I would suggest that you give this other $2,500.00 to some company in Salt Lake. One of your friends, no doubt, will be glad to write it for you as most companies will accommodate their agent for a reasonable amount and this probably will be a solution of this awkward situation.

"Thanking you to give your early attention to this matter and with kindest personal regards, I am."

This last letter was received on the morning of November 19, 1932, but the Roseland Dance Hall had been totally destroyed by fire a few hours before, the fire commencing about 3:30 a. m. on November 19th.

It is undoubtedly the law that, where an insurance company under the terms of the policy of insurance is entitled to cancel the policy or reduce its amount, it may direct its agent to cancel or reduce and it is the duty of such agent forthwith to do so, and, if he negligently delays ∎ in obeying his instructions and loss occurs thereby, he is liable to the insurer for the amount it is required to pay in settlement of the loss. *National Union Fire Insurance Company* v. *Dickinson*, 92 Wash. 230, 159 P. 125, Am. Cas. 1918C, 1042, see also note at page 1043; *Washington Fire & Marine Ins. Co.* v. *Chesebro* (C. C.) 35 F. 477; *London Assurance Corporation* v. *Russell*, 1 Pa. Super. 320; 2 Couch, Ency. Ins. Law, 1424; 32 C. J. 1073; 14 R. C. L. 874. The instructions of plaintiff to its agents, as quoted above, is in harmony with the rule of law above stated. Such instructions contained no provision covering any request to the company by the agent for a reconsideration of its order to cancel or reduce. Had notice of cancellation or reduction been given promptly by defendants upon receipt of the first notice, plaintiff would not have been required to pay a loss in excess of $2,500, as the fire occurred approximately ten or eleven days after such notice was received. The date when such notice was received is not fixed by the evidence, but it appears from the other correspondence that the time consumed in transportation of mail between Salt Lake City and San Francisco is not to exceed three days.

Defendants do not question the rule of law above stated, but attempt to relieve themselves from liability for the delay by saying they had a right to ask the company for a reconsideration of its demand and that the letter of the 16th from the company to the agents in reply to the agents' letter of November 13th is a recognition of the right to ask for a reconsideration and is a waiver of the delay up to that time and that they had a reasonable time, that is, three to five days, in which to comply with the request for reduction after the receipt of the second letter. The loss having already occurred before receipt of the letter, the question of reasonable time is immaterial and that they are not liable for the delay.

It may be conceded that defendants had a right to ask for reconsideration of the peremptory order to reduce the amount of insurance, but, where such request is made under the circumstances as shown by this record, the question still remains whether the delay thereby occasioned was at the risk of the agents or at the risk of the principal. In 2 Couch, Encyc. of Ins. Laws, 1425, it is said:

"And liability for resulting damage arises in the case of failure to carry out peremptory instructions to cancel, even though the agent delayed from a mistaken view as to the safety of the risk and the wisdom of canceling the same, or from a belief that his company was misinformed * * * On the other hand, it has been held that an agent is not liable for failure to cancel within the required time, if he has requested his company to reconsider the order, and, in accordance therewith, it has taken the matter under consideration."

The cases cited in support of the above quotation are the same cases cited by the parties hereto, which we shall now consider. Plaintiff cites *London Assurance Corporation* v. *Russell,* supra, and *Washington Fire & Marine Insurance Co.* v. *Chesebro,* supra. In the Russell Case the insurance company wrote its agent requesting cancellation of the policy, the agent delayed cancellation, indicating by his testimony that he did not intend to comply with the request. He

did not, as here, request a reconsideration, although he did talk with a special agent of the company and stated his reasons why he thought the policy should not be canceled. Before loss occurred the company again wrote the agent, calling his attention to the fact that the policy had repeatedly been ordered canceled and asking his prompt attention to the matter. A defense urged was that the company having permitted the policy to run three or four months after issuing its order to cancel, was guilty of contributory negligence which would defeat its claim for damages. The court held against the defendant and said the correspondence showed the insurance company relied on its first notice to cancel and that it was a primary obligation of the agent to obey the orders of his principal and that "one who receives orders to cancel a policy delays their execution at his peril." In the Chesebro Case the agent was instructed to cancel a policy at once. Believing the company misinformed as to the risk, he wrote explaining the matter and said he would hold the policy until he received further orders. Plaintiff wrote the agent again, insisting on cancellation and return of the policy. The insured building burned the same day the last letter was received. The court charged the jury as follows:

"That if the agent delayed complying with the peremptory orders of the company to cancel the risk, and did so delay from a mistaken view of the safety of the risk and the wisdom of canceling it, or in the hope of persuading the plaintiff to continue the risk, the delay in the meantime was at his own peril and at his own risk if a fire should occur."

It would seem to follow from the plaintiff's instructions to its agents and the law as announced in the cases referred to that defendants were under the duty to promptly reduce the amount of the policy according to the positive directions of their principal and that the delay in so doing was at their own risk.

Defendants, over objection, elicited testimony from other insurance agents of Salt Lake City to the effect that a reasonable time within which to comply with an order to

cancel would be three to five days. If notice had been given promptly within such reasonable time after the first notice to reduce the policy, the risk would have been canceled before the fire loss occurred. The defendants' liability is therefore established unless the action of the company in writing the letter of November 16th relieves them of liability. Defendants claim that this letter is an acknowledgment of their right to request reconsideration and is an express consent to a reduction of the policy within a reasonable time after receipt thereof, thereby continuing plaintiff's risk at least three to five days after receipt of the letter. The finding of the court in this respect was that the letter contained a waiver of any objection the plaintiff might otherwise have had to defendants' failure to reduce the policy as requested in its letter of November 5th, and thereby waived any objection it might otherwise have had to defendants writing their letter requesting reconsideration. Defendants cite and rely on the case of *National Liberty Insurance Co.* v. *Banta,* 180 Wis. 193, 192 N. W. 985. The headnote, which fairly states the decision, is as follows:

"Where agents were given five days within which to procure other insurance after receiving an order to cancel policies written by them, and during that time requested the company to reconsider its order for cancellation, which it was shown to have done by an unreasonable delay in answering the request and by referring the matter to its state agent, the agents were thereafter entitled to five days after receiving a letter from the state agent reaffirming the order to cancel, and were not liable to the insurance company for a loss occurring before the expiration of the five days."

The court said the agent had a right to assume the principal had acceded to his request for reconsideration because of unreasonable delay in replying, and that the company did actually reconsider the matter. We doubt the soundness of the decision. It is difficult to see how an agent by such request can put the principal in a position where it will have waived the effect of its positive instructions. However that may be, the case differs from this one on its facts in

important particulars. Here there was no admitted five-day period allowed the agent to effect cancellation of the policy, although there was evidence of a practice to take from three to five days for such purpose. The agents here did not promptly and within the five-day period request reconsideration. The company did not, as in the Banta Case, reexamine or reconsider the matter, or delay or take undue time in making reply, but immediately wrote reaffirming its request for cancellation.

We cannot find in the letter of November 16th any waiver of plaintiff's rights as found by the trial court. A waiver is the intentional relinquishment of a known right. 27 R. C. L. 904. To constitute a waiver, there must ■ be an existing right, benefit, or advantage, a knowledge of its existence, and an intention to relinquish it. It must be distinctly made, although it may be express or implied. 27 R. C. L. 909. The letter is no more than a polite reaffirmance of the demand for reduction of the policy with an explanation of why its request had to be made and could not be abandoned. There is not in it anything to indicate a waiver or relinquishment of the right to insist on the agents' compliance with its orders or of any right to hold the agents liable for any risk or liability incurred or to be incurred by reason of the delay.

In the findings of facts the court made findings responding to the undisputed evidence respecting the issuance of the policy, the correspondence between plaintiff and defendants, the payment of the full amount of the policy covering loss to the insured, and then entered finding No. 6, which reads as follows:

"That the defendants, as agents of the plaintiff, were justified in writing their said letter of November 13th, 1932, to the plaintiff; that the plaintiff, by its letter of November 16, 1932, waived any objection it might otherwise have had to the defendants' failure to reduce said policy as requested in letter of November 5, 1932, from the plaintiff to the defendants, and waived any objection it might otherwise have had to the defendants writing their letter of November 13, 1932, to the plaintiff, that the defendants, in writing their letter of November

13, 1932, to the plaintiff, as aforesaid, and in thereby seeking further advice from the plaintiff relative to the reduction of the amount of said policy, did not act contrary to their duty to the plaintiff in the premises, and did not act contrary to instructions, and did not wrongfully fail or neglect or refuse to cancel said policy."

This is in the nature of a recital of conclusion of law which in our view of the case do not follow from the facts as found by the court. There was evidence admitted over objection respecting a custom or practice in this locality of agents, after having been ordered to cancel a policy, having the right to request reconsideration of such order. Plaintiff objected to the testimony, and the rulings of the court admitting the testimony are assigned as error. The testimony of the witnesses indicates a practice with the companies which they represented, but does not rise to the dignity of an established custom. Nor is there any showing that such a custom, if it existed, was brought to the knowledge of plaintiff, *Westchester Fire Ins. Co.* v. *Bollin,* 106 S. C. 45, 90 S. E. 327. Such a practice would be contrary to plaintiff's instructions to its agents. The trial court made no finding as to the existence of such custom, and we would be justified in concluding the court disregarded the evidence with respect thereto but for the sixth finding quoted above, which would seem to be a statement of conclusions of law resting partly, at least, on evidence of the custom.

Taking the view we do on the admitted facts and the facts actually found by the court, it becomes unnecessary to pass on the other assignments of error.

The judgment is reversed, and the cause remanded to the district court of Salt Lake county, with directions to grant a new trial; costs to appellant.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.