**GULF INSURANCE COMPANY, Inc.,**
Appellant,

v.

**The KOLOB CORPORATION, Inc.,**
Appellee.

No. 9803.

United States Court of Appeals
Tenth Circuit.

Dec. 6, 1968.

Rehearing Denied Jan. 17, 1968.

George L. Vargas, Reno, Nev. (Gordon R. Strong, Salt Lake City, Utah, Vargas, Bartlett & Dixon, Reno, Nev., and Strong & Hanni, Salt Lake City, Utah, with him on the brief), for appellant.

Harold G. Christensen, Salt Lake City, Utah (Robert M. Anderson, Worsley, Snow & Christensen, and Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, with him on the brief), for appellee.

Before LEWIS, SETH and HICKEY, Circuit Judges.

SETH, Circuit Judge.

Appellant, Gulf Insurance Company, Inc., brought this action against the appellee, The Kolob Corporation, Inc., to recover the amount of a judgment and costs which the appellant had paid in an action brought against it on a fire insurance policy. Appellee was a former general agent of appellant insurance company, and the fire loss had occurred on property insured by the appellant under a policy which it asserts should have been cancelled by the appellee before the loss.

The case was tried to a jury which found for the appellant in an amount less than the amount sued for. The lesser amount was apparently awarded in accordance with instructions from the court that the appellant could only recover a fractional amount of the loss. However, the trial court upon motion of the appellee set aside the jury verdict and directed a verdict in favor of the appellee.

The appellant on this appeal urges that the trial court was in error in directing the verdict and in giving and refusing certain instructions.

The record shows that the appellant was engaged in the fire insurance business and had entered into a general agency contract with appellee. A substantial amount of insurance had been written for appellant through the agency including the fire insurance policy in question. Appellant thereafter terminated the general agency agreement with the appellee, and arrangements were made whereby appellee would continue to collect and remit certain premiums and would also handle the cancellation of outstanding policies.

Pursuant to this arrangement, the appellant requested appellee to cancel a substantial number of policies, including the policy here in issue. The request for cancellation pertinent to this appeal was made in writing on November 19, 1962; however, appellee did not cancel the policy, and on December 31, 1962, the insured property was destroyed by fire. The insured recovered a judgment against appellant in an action brought on the policy in Nevada. In connection with this litigation, appellant incurred certain adjustment costs, attorneys' fees and expenses. This action was then commenced by appellant to recover the amount of this judgment and the additional fees and expenses from appellee.

The record also shows that during the period the policy and the general agency agreement were in effect, an officer of the appellant became concerned about the nature of the risk and requested the appellee to arrange for reinsurance. This was done, and several other companies, procured by the appellee, reinsured appellant on this risk to the extent of four-fifths of the face amount of appellant's policy. This reinsurance was evidenced by a certificate of reinsurance which shows on its face that it covered policy No. C–6167002, which was the policy in

question. The certificate listed the re-insuring companies thereon with the amounts ceded. This reinsurance was secured and the certificate issued by the appellee.

The basic issue raised by the complaint and which was developed during the trial of the case was whether or not an unreasonable period of time elapsed following the request by the appellant that the appellee cancel the policy, and thus whether or not the appellee was negligent in not taking action prior to the date of the fire loss. As the trial court instructed the jury: "There is no dispute, I think, in this case as to the fact that Kolob Corporation agreed to handle the cancellation of Gulf policies upon the request of Gulf. The dispute is rather about how they were to do it and within what time should they do it."

The jury returned a verdict for appellant and the defendant-appellee moved that the verdict be set aside on the ground that there was no evidence of negligence sufficient to support the verdict, and there was no showing that the six weeks' delay was an unreasonable time to effect the cancellation under the circumstances. The court granted this motion for the reason that there was no evidence that an unreasonable length of time had elapsed, and this in turn, as indicated by the trial court, was based on the testimony of the witness, Mr. Frank Salisbury.

There was however evidence presented relating to the delay from which several conflicting inferences could be drawn by reasonable men. This in our opinion was sufficient for the case to go to the jury in the first instance and was likewise sufficient to prevent the verdict rendered from being set aside.

The request for cancellation was clear and definite. There is no question but what it was received by the appellee, and had been preceded by a request for action upon the prior cancellation of other policies with an indication that difficulties would arise in the event a loss occurred and steps had not been taken to cancel the policies.

The transcript shows that after the termination of the general agency, the appellee was busy with the requests for cancellation, and in attempting to replace the cancelled policies with coverage by other companies in order to accommodate its agents and to assist in retaining their clients. The testimony of Mr. Salisbury upon which the trial court relied was in part as follows: "In view of the conditions we were operating under at that time, with hundreds of cancellations to be processed and being processed in a class of risk that we were working on, six weeks wasn't an unreasonable time to perfect that cancellation." When the witness was cross-examined, he was asked whether if the request had been received and the appellee had waited six weeks and done nothing at all would this be unreasonable, to which the witness replied: "It probably would, if Kolob did nothing, but I don't think they did nothing." The witness, who was president of the appellee corporation at the time, on further examination testified that he did not know of anything that Kolob had done on the request for cancellation. Thus the testimony was that the president of the appellee did not think that six weeks would be an unreasonable time if some action were taken, but he did not know that any action had been taken. In our opinion this testimony together with the other evidence as to the prevailing conditions was sufficient to submit the case to the jury and was sufficient to withstand a motion to set aside the verdict. Thus the trial court was in error in setting aside the verdict and in directing a verdict for the other party.

We held in Readnour v. Commercial Standard Ins. Co., 253 F.2d 907 (10th Cir.), that it is error for the trial court to direct a verdict when the evidence is in conflict and also in the event that conflicting inferences may be derived from evidence which is unchallenged. See also United States Steel v. Warner, 378 F.2d 995 (10th Cir.). We

also have said that it is not the province of the district court nor the appellate court to weigh the evidence. In the case before us the trial court upon the motion of the appellee to set aside the verdict and to direct a verdict for it was to consider the evidence in the light most favorable to the appellant. Adams v. Powell, 351 F.2d 273 (10th Cir.); Kirkendoll v. Neustrom, 379 F.2d 694 (10th Cir.). This court on this appeal on the issue also views the evidence in the same way. Peter Kiewit Sons Co. v. Clayton, 366 F.2d 551 (10th Cir.); Mitton v. Granite State Fire Ins. Co., 196 F.2d 988 (10th Cir.).

The testimony and the inferences from the evidence were such that reasonable persons exercising impartial judgment could have reached different conclusions. Peter Kiewit Sons Co. v. Clayton, supra; Western Transmission Corp. v. Colorado Mainline, Inc., 376 F.2d 470 (10th Cir.).

■■ The Supreme Court of Utah in Phoenix Ins. Co. v. Heath, 90 Utah 187, 61 P.2d 308, 106 A.L.R. 1391, held that an insurance company may direct an agent to cancel a policy and when it does so, it is the duty of the agent "forthwith to do so," and if he negligently delays in following these instructions and a loss occurs, he becomes liable to the insurer. The issue is fully considered in the cited case and it would serve no useful purpose to restate it here. The same rule is followed in other states.

It was for the jury to determine whether or not under the circumstances described at the trial a six-weeks' delay by the appellee in acting on the appellant's request to cancel the policy was reasonable or unreasonable.

■ It is no defense, as was urged by appellee, for the agent or general agent under these circumstances to assert that it was within the power of the insurance company to itself cancel the policy. The company also had the right to cancel in Phoenix Ins. Co. v. Heath, supra, and the court, although it did not discuss this issue, said that under these circumstances when the agent was requested to

cancel and he did not do so promptly, he could become liable. Courts in other jurisdictions have considered the issue. St. Paul Fire & Marine Ins. Co. v. Bigger, 102 Kan. 53, 169 P. 213; 105 Kan. 311, 182 P. 184; Washington v. Mechanics & Traders Ins. Co., 174 Okl. 478, 50 P.2d 621 (Okl.); Mitton v. Granite State Fire Ins. Co., 196 F.2d 988 (10th Cir.); National Automobile & Cas. Ins. Co. v. Allco Ins. Agency, 403 S.W.2d 174; Dunn v. Commercial Union Ins. Co., 27 A.D.2d 240, 277 N.Y.S.2d 940; United States Cas. Co. v. Hiers, 233 S.C. 333, 104 S.E.2d 561, and see Annot., 106 A.L.R. 1397. Thus there is no issue present as to appellant's "contributory negligence" in not itself cancelling as it had the right to rely on the appellee to do so.

The record shows there existed the duty of the appellee to act when it received instructions to cancel. The general agency arrangement had of course been terminated, but appellee had undertaken under an agreement with the appellant to handle cancellations of the policies and other matters. Under these circumstances, it is apparent that the appellee had a duty to take prompt action under the circumstances to effect the cancellation.

■ The trial court instructed the jury that in the event it should find for the appellant, it should not award the appellant more than one-fifth of the amount paid in satisfaction of the Nevada judgment on the fire loss, and not more than one-fifth of the expenses and attorneys' fees incurred in connection therewith. The trial court so instructed the jury apparently on the theory that by reason of the reinsurance certificate, there were in effect five insurance companies as insurers of the property, and since the appellant was but one of the five, it could recover only one-fifth of the loss. This instruction was not correct for the reason that the original policy, after the reinsurance, continued to be in effect between the insured and the appellant as theretofore. The appellant through the reinsurance had pro-

tected *itself* by agreements with several companies, and had in effect "laid off" part of its own risk with other companies. The reinsurance in no way affected the original policy as far as the insured was concerned, and as far as the appellee was concerned, there was but one policy in existence, appellant's No. C–6167002. Also the fact that the appellant had requested appellee, its general agent, to procure this reinsurance does not alter the legal relationship of the parties. Following the reinsurance appellant was still initially liable for the entire amount of the loss, and as demonstrated by the record in this case, it defended the action brought by the insured in Nevada and paid the entire judgment there recovered. It was subsequently reimbursed in part by the reinsurers pursuant to their undertakings with appellant. Under a true reinsurance arrangement the initial or ceding company retains its relationship with the insured and handles all matters prior to and subsequent to a loss in the absence of contrary provisions in the reinsurance agreement. 13 Appleman, Insurance Law and Practice, § 7681; Maurer v. International Re-Insurance Corp., 31 Del. Ch. 352, 74 A.D.2d 822; Prudential Ins. Co. of Great Britain v. Associated Employers Lloyds, 250 S.W.2d 477 (Tex.Civ. App.). Under the limited record before us on this appeal it appears that the appellant was the only necessary party and could recover against appellee the entire amount of the loss under the policy and expenses if it could prove the allegations contained in its complaint.

 The appellant further urges that this action was properly a counterclaim on the action brought by the insured on the fire policy in Nevada. The record, however, indicates that the action on the policy was an entirely separate and unrelated action to the one here brought by the appellant and consequently it was proper to so commence this separate suit against the appellee.

The other contentions of the parties including the motions for directed verdict by appellant have been considered and would seem to require no separate statement herein.

The jury under the court's instruction to limit recovery to one-fifth returned a verdict for appellant in an amount which does not appear to be one-fifth of the fire loss itself nor of the added costs and fees.

 There is nothing in the record and we have been cited no authority to demonstrate that it would be proper to include in the damages here sought a claim for the attorneys' fees and costs portion of the Nevada recovery. We are of the opinion that such attorneys' fees and costs should not be submitted to the jury as a portion of the asserted damages in this action.

It is necessary that the case be reversed and remanded for a new trial, and it is so ordered.