**Byron T. WEEKS, Guardian ad Litem of Valerie Weeks, a minor, Plaintiff-Appellee,**

v.

**LATTER–DAY SAINTS HOSPITAL, a corporation, Defendant-Appellant.**

**No. 164–69.**

United States Court of Appeals
Tenth Circuit.

Dec. 4, 1969.

---

2. Penal Code § 647(f).

3. 1959–61 Report of Assembly Interim Committee on Criminal Procedure, Volume 22, No. 1, page 199.

Albert R. Bowen, Salt Lake City, Utah (Marvin J. Bertoch, Salt Lake City, Utah, with him on the brief) for appellant.

C. Keith Rooker, Salt Lake City, Utah (Dale A. Kimball, Salt Lake City, Utah, and Fred J. Hahn, Idaho Falls, Idaho, with him on the brief) for appellee.

Before PHILLIPS, Senior Circuit Judge, BREITENSTEIN, and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

Appellee Valerie Weeks, through her guardian ad litem commenced an action against appellant L.D.S. Hospital in the Federal District Court in Utah. Appellee sought damages for body burns caused by the alleged negligence of the hospital. The trial court at the close of the evidence directed a verdict against the hospital on the issue of liability and submitted the case to the jury for the determination of damages. The jury was instructed on damages and returned a verdict in the amount of $44,000.00. The hospital appealed the judgment and verdict.

The appeal presents four issues for determination: (a) Should the trial court have directed a verdict on the issue of liability? (b) Was the verdict excessive in the light of the evidence? (c) Should the trial court have admitted two regulations relating to the responsibility of care and maintenance of hospital equipment? (d) Were the instructions concerning damages erroneous statements of the law?

Valerie, an infant two years old, entered appellant hospital for surgery to correct a congenital defect in the blood vessels of the heart. The day following her admission the surgery was performed.

Dr. Hruska, an anesthesiologist on the hospital staff but not an employee, prepared the infant for surgery and administered the anesthetic. Dr. Hruska used an Aquamatic K-Thermia machine to control the infant's temperature during the operation.

The machine was purchased by the hospital and kept on the premises for use in the anesthetic department and on other occasions when the doctors in charge of patients ordered its use.

The machine contains a reservoir of fluid which may be heated or cooled to provide circulating fluid for a rubber mattress which is placed under the patient. Corrugated indentations contained in the mattress evidence the channels or tubes through which the thermally controlled fluid circulates. A pillow slip was used to cover the mattress upon which appellee was placed. The temperature of the circulating fluid is set manually by control knobs which indicate maximum and minimum temperature extremes. Dr. Hruska set the extremes at 40°F minimum and 102°F or 103°F maximum. The machine is also provided with a thermistor probe which is a temperature sensing device connected to the machine by an electric cord. This probe is inserted into the body of the patient and indicates, by means of a thermometer, the body temperature of the patient.

In controlling the temperature of a patient the machine may be operated manually or set for automatic control. Prior to the operation Dr. Hruska observed the functioning of the machine for approximately ten minutes. He then set the machine on automatic control for the operation.

The operation lasted approximately two hours. When the operation had been in progress for approximately one and one half hours another doctor entered the operating room to observe the course of the operation. He became entangled in the cord leading from the thermal reservoir of the machine to the electrical heat sensing device in the appellee's body. The jack on the cord was pulled from the machine and its plastic case shattered on the floor. Within four minutes Dr. Hruska turned the machine off and the operation proceeded to its conclusion. The temperature control knobs on the reservoir remained at the initial settings throughout the operation.

At the conclusion of the operation when the appellee was being lifted from the operating table to her bed, alternate areas of redness and pallor were observed along her right side, chest and hip which had been the portion of her body resting upon the thermal mattress attached to the machine. Corrugations, identical with the ones on the mattress, were evidenced on the infant's side.

Within a short time a specialist in plastic surgery was called and treated the burns. Within five days the infant was released from appellant hospital and returned to her home in Idaho Falls, Idaho, where she came under the treatment of another plastic surgeon.

This action followed with the result above indicated.

The appellant hospital contends the trial court erred in directing a verdict on the issue of liability.

■ The discretion of the trial court in directing a verdict in this case is tested by federal law. Christopherson v. Humphrey, 366 F.2d 323 (10th Cir.

1966); Gutierrez v. Union Pacific R. R. Co., 372 F.2d 121 (10th Cir. 1966).[1]

In considering a motion to direct a verdict the trial court should view the evidence in the light most favorable to the party against whom the motion is made. Kirkendoll v. Neustrom, 379 F.2d 694 (10th Cir. 1967). The appellate court reviewing the action must apply the same rule. Gulf Ins. Co. v. Kolob Corp., 404 F.2d 115 (10th Cir. 1968).

■ A trial court may direct a verdict where the evidence is conflicting but conclusive. *Gutierrez, supra.* "Although a scintilla of evidence is not sufficient to justify submitting a case to the jury, a verdict may not be directed unless the evidence points all one way and is susceptible of no reasonable inferences which sustain the position of the party against whom the motion is made." *Christopherson, supra* 366 F.2d at 326. Unless reasonable fair-minded persons could form different conclusions of the facts, a motion for directed verdict should be granted. Miller v. Brazel, 300 F.2d 283 (10th Cir. 1962).

■ In testing the evidence and the facts relative to the negligence, here charged, it is evident from the dialogue in the record the trial court was aided by the doctrine of res ipsa loquitur.[2] "The doctrine of res ipsa loquitur springs from the very practical process of drawing logical conclusions from circumstantial evidence." Joseph v. W. H. Groves L.D.S. Hospital, 10 Utah 2d 94, 348 P.2d 935, 936 (1960). Where there is sufficient evidentiary foundation, the doctrine should be applied. Talbot v. Dr. W. H. Groves L.D.S. Hospital, Inc., 21 Utah 2d 73, 440 P.2d 872 (1968).

The dialogue between court and counsel indicates an understanding that the K-Thermia machine was owned by and under the control of appellant hospital.

Although appellant attempts to shift the burden of responsibility for defects in the machine to the anesthesiologists who are not the exclusive users of the machine, no evidence was offered which would tend to indicate the anesthesiologists were electronic experts capable of detecting electronic malfunctions in the machine. Appellant offers no evidence that the defect in the machine was patent, in fact, appellant offers no evidence concerning the cause of the injury to rebut the inference of negligence which shifted to them under the theory of res ipsa loquitur.

The testimony of the appellee's experts was to the effect that appellee could not have been so severely burned unless the circulating fluid in the reservoir had a temperature somewhere in the neighborhood of 115°F. The experts further testified that the burn could not have been caused during the three or four minute interval between the time the cord was accidentally pulled from the machine and the time the machine was turned off. To the contrary the experts testified a much longer period of increased thermal capacity would be required to cause the burn.

■ The appellee, of tender years, was unconscious and had the right to rely upon the hospital to furnish a properly functioning device to aid the operative procedures. There was no testimony establishing that the accidental pulling of the cord from the machine increased the risk of harm. *See* Hillyard v. Utah By-Products Co., 1 Utah 2d 143, 263 P.2d 287 (1953).

The trial court noted that appellee was severely burned while unconscious and that, but for the fact the machine was not properly working, the burn would not have occurred.

---

1. This circuit has defined the discretion of the trial court in directing a verdict in Derr v. Safeway Stores, 404 F.2d 634 (10th Cir. 1969); Gulf Ins. Co. v. Kolob Corp., 404 F.2d 115 (10th Cir. 1968); Codding v. Armour Co., 404 F.2d 1 (10th Cir. 1968).

2. Utah considers the doctrine a rule of evidence. Williamson v. Salt Lake & O. Ry. Co., 52 Utah 84, 172 P. 680, L.R.A.1918F, 588 (1918).

■ Opportunity was given appellant to reopen the case and rebut the foregoing inferences arising from the facts. The inferences were not rebutted and the court properly concluded the evidence was all one way and that fair reasonable minded men could not conclude otherwise. The motion for a verdict determining liability was properly granted.

■ Appellant next contends the jury verdict of $44,000 was excessive. "Due to its acknowledged prerogatives, its advantaged position, and the desirability of safeguarding the integrity of the jury system, the courts are and should be reluctant to interfere with a jury verdict and will not do so as long as there is any reasonable basis in the evidence to justify it." Brunson v. Strong, 17 Utah 2d 364, 412 P.2d 451, 453 (1966). A review of the record reveals sufficient evidence to justify the award made. Accordingly, we cannot interfere with the jury's determination.

■ Appellant contends that the trial court should have admitted into evidence two rules relative to the administration of the hospital.

The excised rules were offered as well as testimony concerning their contents. The court denied the admission.

The rules are:

"Duties of the Chief of the Department of Anesthesiology will be: * * (e) General supervision of the procurement and maintenance of equipment and the procurement of supplies."

General supervision is further defined:

"8. All equipment, supplies, drugs, etc. will be purchased, provided and maintained up-to-date and in good condition by the hospital. A suitable person will be employed by the hospital to be in charge of the maintenance of all equipment and the requisition of all anesthesia supplies. While employed by the hospital administration, this individual will serve under the direction of the Chief of the Department of Anesthesiology."

The Chief of Anesthesiology testified that although he noted a slight variance in the thermal capacity as recorded on the machine on a prior occasion, he notified no one nor did he believe he was responsible for the maintenance.

The individual responsible for the maintenance as described in section 8 above was never identified; on the contrary, everyone disclaimed responsibility.

The testimony was to the effect that the regulations were subject to seasonal revision and no one knew whether or not they had been revised. Only the two provisions sought to be admitted were shown to be in effect at the time of the injury. No showing could be made that the remaining departmental regulations were in effect at that time. Accordingly, they could not be admitted into evidence.

The admission of the two rules was objected to on the ground that they would be misleading when taken out of context of the entire regulation. The trial court refused to admit the rules on this basis.

"[I]t is generally conceded that the trial court in the exercise of its discretion is more competent to judge the exigencies of the particular case. The discretion of the trial court, when exercised within normal limits should not be disturbed." Brigham Young Univ. v. Lilly-White, 118 F.2d 836, 841 (10th Cir.), cert. denied, 314 U.S. 638, 62 S.Ct. 73, 86 L.Ed. 512 (1941).

It is also important to note that a patent ambiguity exists between the two offered rules in that the first rule purports to place the burden of the maintenance of equipment on the Chief of Anesthesiology, while the second rule apparently places the same burden on the hospital. In view of the foregoing facts, we cannot say the court improperly exercised its discretion.

■ The efforts to get the contents of the writing above set out into evidence by oral testimony is proscribed by the best evidence rule. Allen v. W. H. O. Alfalfa Milling Co., 272 F.2d 98 (10th Cir. 1959). The trial court properly refused the evidence.

The final issue raised by appellant relates to the damage instructions given the jury by the trial court.

The only issue submitted to the jury was the damages to be ascertained.

It is contended that the court erred in instructing the jury: "The plaintiff alleges in his complaint that, by reason of her injuries * * * she has sustained special and general damages in the sum of one hundred thousand dollars." It is contended the reference to special damages is error because none were offered or proven. The court, however, immediately following the foregoing instructed: "The allegations in the complaint are not evidence. They reflect the claim that the plaintiff makes."

■ The court then instructed the jury that it could find damages "for any pain, mental anxiety which you find from the evidence in the case that she is reasonably certain to suffer as she grows older and in the future for the same cause, including the need for future psychiatric care or other medical attention." The professional testimony of the medics and the psychiatrist specialist established the elements defined in the foregoing instruction. Accordingly, the instruction conformed to the evidence.

■ Instructions must be considered as a whole. Allers v. Bohmker, 199 F.2d 790 (7th Cir. 1952); *See* Burlington Transp. Co. v. Stoltz, 191 F.2d 915 (10th Cir. 1951).

■ An examination of the instructions as a whole in relation to the evidence contained in the record directs us to conclude the instructions were not in error.

Affirmed.