**SOTER'S, INC., Summit Park Co., Gregory S. Soter, and Julie R. Soter, Plaintiffs,**

v.

**DESERET FEDERAL SAVINGS & LOAN ASSOCIATION and Continental Federal Savings & Loan, Defendants and Cross–Claim Plaintiff,**

v.

**Sherwin KNUDSEN, dba Tri–K General Contractors, and United Pacific Insurance Co., Cross–Claim Defendants.**

**No. 920015.**

Supreme Court of Utah.

July 29, 1993.

---

J. Kevin Bird, Provo, for Soter's, Inc.

Lowell V. Summerhays, Murray, for Kevin Bird.

Duane H. Gillman, Salt Lake City, for Summit Park Co.

William H. Fowler, Salt Lake City, for Duane H. Gillman.

David D. Loreman, Elko, Nevada, for Eva Soter.

Stanford B. Owen, P. Bruce Badger, Salt Lake City, for Deseret Federal Sav. & Loan and Resolution Trust Corp.

Bruce A. Maak, Gregory D. Phillips, Glen E. Davies, Salt Lake City, for Continental Federal Sav. & Loan and Resolution Trust Corp.

Robert W. Hughes, William R. Russell, Salt Lake City, for Sherwin Knudsen and Tri-K General Contractors.

Graham Dodd, M. Karlynn Hinman, Salt Lake City, and Peter C. Haley, Valerie A. Andersen, San Francisco, CA, for United Pacific Ins. Co.

ZIMMERMAN, Justice:

This case is before the court for the determination of several issues of Utah law following certification from the United States District Court for the District of Utah pursuant to rule 41 of the Utah Rules of Appellate Procedure. The certifying federal court is faced with determining the consequences of a state court's jury verdict in a later-removed federal case. The question presented for us by the certification is whether the state court correctly stated the requirements for waiver under Utah law when it framed jury instructions and special interrogatories. We conclude that the state trial court misapprehended the Utah law of waiver and that the waiver instructions and interrogatories misstated the law.

The facts are relatively straightforward. This action originated in state district court when Soter's, Inc., a construction developer, filed an action against lenders Deseret Federal Savings & Loan and Continental

Federal Savings & Loan. The claim arose from the lenders' alleged failure to fund construction of a condominium project in Summit County under a construction loan agreement.

Deseret Federal cross-complained against Tri–K General Contractors for failure to complete the project on time. Tri–K was brought into the action through its construction contract with Soter's under which Soter's, as general contractor, had assigned its rights to Deseret Federal. The construction contract required substantial completion of the project by December 31, 1984. Deseret Federal also cross-complained against United Pacific Insurance Company under a performance bond which had guaranteed Tri–K's performance under the contract with Soter's. As one of two named obligees under the bond, Deseret Federal alleged that United Pacific had breached its duties under the bond because Tri–K had failed to complete the project on time and because United Pacific had failed to honor the resulting bond claim.

Trial was held from May 11 to May 26, 1988. Evidence was presented on Tri–K's claim that Deseret Federal had waived the contract provision requiring Tri–K to substantially complete the project by December 31, 1984. Evidence was also presented on the claim by Soter's that Deseret Federal had waived the right to require completion of the project by a certain date.

So that the jury could resolve these two claims, the court instructed it on the definition of waiver, stating:

A waiver is the intentional relinquishment of a known right. To constitute a waiver, there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it. *To constitute waiver, one's actions or conduct must be distinctly made, must clearly display in some unequivocal manner any intent to waive, and must be inconsistent with any other intent.*

(Emphasis added.) Based on the last sentence of this instruction, the court submitted three special interrogatories for each of the waiver claims. Those respecting Tri–K's claim of waiver read as follows:

22. Has Tri–K established by a preponderance of the evidence that Deseret Federal acted in such a manner as to *distinctly relinquish* the right under the Construction Contract to have the Camelot Condominium Project completed on or before December 31, 1984?

23. Has Tri–K established by a preponderance of the evidence that Deseret Federal clearly displayed in some *unequivocal manner* an intent to relinquish the right under the Construction Contract to have the Camelot Condominium Project completed on or before December 31, 1984?

24. Has Tri–K established by a preponderance of the evidence that any evidence of an intent by Deseret Federal to relinquish the right under the Construction Contract to have the Camelot Condominium Project completed on or before December 31, 1984, was *inconsistent with any other intent?*

(Emphasis added.)

Parallel interrogatories were asked regarding the claim of waiver asserted by Soter's. As to Tri–K's claim, the jury answered "yes" to interrogatories 22 and 23 but "no" to number 24. However, with regard to the claim of waiver, the jury answered "yes" to all three questions posed.

During the month following the verdict, the parties filed motions addressing what effect the jury's responses to the special interrogatories should have. On April 18, 1989, the trial court executed a set of findings of fact and conclusions of law, as well as an order, a judgment, and a decree of foreclosure. Because of the jury's negative answer to interrogatory 24, the court awarded judgment for Deseret Federal against Tri–K and United Pacific, jointly and severally, for an amount equivalent to the project completion costs. The court stayed execution on the judgment until post-trial motions had been heard.

Before the post-trial motions could be decided, Deseret Federal was placed in re-

ceivership under the direction of the Resolution Trust Corporation ("RTC"). The RTC removed the case to the United States District Court for the District of Utah under 28 U.S.C. § 1441. That court concluded that resolution of this matter hinges on the legal concept of waiver but found that Utah law in this area is ambiguous. Consequently, the court then certified the following questions to this court:

1. What is the burden of proof necessary to establish waiver under Utah law?

a. Is there one standard generally applicable to all situations involving waiver?

b. Are there two different applicable standards depending on whether waiver is alleged from a party's action or conduct, or a party's inaction or silence?

1) Where waiver is alleged from a party's *action or conduct*, must the action or conduct of that party unequivocally show an intent to waive *or* at least be inconsistent with any other intent?

2) Where waiver is alleged from a party's *silence or failure to act*, must the silence or failure to act on the part of that party be unequivocal *and* inconsistent with any other intent?

2. Were the jury instructions given in the instant case consistent with Utah law on the law of waiver?

3. Were the special interrogatories asked in the instant case consistent with Utah law on the law of waiver?

We now address those questions.

Having reviewed our case law on the issue of waiver, we agree with the federal court's conclusion that our cases are ambiguous. In fact, we find that the language in some of our cases has incorrectly stated the law, understandably leading to the erroneous instructions and interrogatories given by the state court.

We start with *Phoenix Inc. v. Heath,* 90 Utah 187, 194, 61 P.2d 308, 311–12 (1936). There, we stated:

A waiver is the intentional relinquishment of a known right. To constitute a waiver, there must be an existing right, benefit, or advantage, a knowledge of its existence, and an intention to relinquish it. [*The relinquishment*] *must be distinctly made, although it may be express or implied.*

(Emphasis added) (citations omitted); *American Sav. & Loan Ass'n v. Blomquist,* 21 Utah 2d 289, 292, 445 P.2d 1, 3 (1968); *see also Bjork v. April Indus., Inc.,* 547 P.2d 219, 220 (Utah 1976). In writing the legal standard for waiver, we routinely used this formulation until *Hunter v. Hunter,* 669 P.2d 430 (Utah 1983).

*Hunter* involved a claim of waiver implied from silence or inaction. In reversing the trial court's finding of waiver under the facts of the case, the majority restated the legal elements articulated in *Phoenix* but then elaborated on *Phoenix* by stating:

To constitute waiver, one's actions or conduct must be distinctly made, must evince in some unequivocal manner an intent to waive, and must be inconsistent with any other intent. *See [American Sav. & Loan Ass'n v. Blomquist,* 21 Utah 2d at 292, 445 P.2d at 3 (quoting *Phoenix Ins. Co. v. Heath,* 90 Utah at 194, 61 P.2d at 311–12)]. *See also, e.g., Waterway Terminals Co. v. P.S. Lord Mechanical Contractors,* 242 Or. 1, 406 P.2d 556 (1965); *Wagner v. Wagner,* 95 Wash.2d 94, 621 P.2d 1279 (1980).

669 P.2d at 432. Although *Hunter*'s elaboration on *Phoenix*'s waiver definition appeared to make the legal standard for waiver more restrictive, succeeding decisions continued to quote and apply *Phoenix*'s legal definition. *See Parks v. Zions First Nat'l Bank,* 673 P.2d 590, 604–05 (Utah 1983); *Morgan v. Quailbrook Condominium Co.,* 704 P.2d 573, 578 (Utah 1985); *Plateau Mining Co. v. Division of State Lands & Forestry,* 802 P.2d 720, 730 (Utah 1990).

That move back to *Phoenix* might have resolved the question but for the creation of the Utah Court of Appeals in 1987. Our treatment of our own precedent and dictum is routinely less reverential than that ac-

corded by other Utah state courts. This approach has led us, on occasion, to be less than consistent in the manner in which we state legal principles, a result that has been increasingly fraught with complicating potential since the court of appeals was created. *See State v. Thurman,* 846 P.2d 1256, 1268 (Utah 1993). The court of appeals was forced to deal with the arguably inconsistent language found in *Phoenix, Hunter,* and their progeny. Understandably, some panels of the court of appeals relied on the statement of the legal elements laid out in *Phoenix. See Hertz v. Nordic Ltd.,* 761 P.2d 959, 962 (Utah Ct.App.1988). However, others followed *Hunter*'s lead and fashioned more elaborate and arguably more restrictive tests or standards of proof, using language derived from both *Phoenix* and *Hunter. See B.R. Woodward Marketing, Inc. v. Collins Food Serv., Inc.,* 754 P.2d 99, 101 (Utah Ct.App.1988); *Barnes v. Wood,* 750 P.2d 1226, 1230 (Utah Ct.App.1988).[1]

Our own decisions and those of the court of appeals created some confusion for the trial courts when they instructed juries on the definition of and requirements for waiver. This confusion first came to our attention obliquely in *Rees v. Intermountain Health Care, Inc.,* 808 P.2d 1069 (Utah 1991). Unfortunately, we did not directly confront this problem when we examined challenged jury instructions in that case. There, we approved of an instruction which was patterned after the court of appeals' *B.R. Woodward* decision and provided, "The action or conduct of a party waiving a right must unequivocally show an intent to waive *or* must at least be inconsistent with any other intent." *Rees,* 808 P.2d at 1074–75 (emphasis added) (citing *B.R. Woodward,* 754 P.2d at 101). At the same time, we found no error in a seemingly inconsistent instruction which paralleled *Hunter* and provided, "Silence, or failure to act under some circumstances

may be sufficient to prove waiver where such silence or failure to act is unequivocal *and* inconsistent with any other intent." *Id.* (emphasis added).

With *Rees*'s tacit approval of two apparently different standards of proof for waiver, both at variance with *Phoenix*'s statement of the legal elements, the waiver issue had become thoroughly confused. Parties such as Tri–K and United Pacific sought to identify factual differences between the various cases that could logically account for the different standards of proof which appeared to have been applied by this court and the court of appeals in different decisions. Those parties now argue that under this case law, a critical distinction in the legal requirements for waiver depends on whether a waiver is to be implied from actions or conduct on the one hand, or inaction or silence on the other. Relying on that distinction, Tri–K and United Pacific now claim that the trial court employed an incorrect standard of proof for the type of implied waiver at issue here.[2]

We agree that the trial court erred in the instructions and interrogatories, but not for the reasons advanced. Rather, we think that the error resulted from the rather random movement in our law of waiver away from pure legal requirements toward a description of facts that seemed important in particular situations in determining whether the legal requirements of waiver were met. Unfortunately, we and the court of appeals tended to elevate to statements of general application what amounted to case-bound determinations of factual sufficiency. We now look at our statements of waiver law analytically.

■ We first recognize the common ground in all our decisions on the elements of waiver: This court has consistently defined waiver as "the intentional relinquish-

---

**1.** In both cases, the court of appeals indicated that a "party's actions or conduct must evince unequivocally an intent to waive *or* must" at least "be inconsistent with any other intent." *B.R. Woodward,* 754 P.2d at 101 (emphasis added); *Barnes,* 750 P.2d at 1230. This test for waiver, however, differs from that stated in

*Hunter.* In *Hunter,* the word "and" was employed in place of the word "or."

**2.** The parties do not dispute that the waiver question at issue here is an implied, not an express, waiver.

ment of a known right." *Rees*, 808 P.2d at 1073 (citing *American Savings*, 445 P.2d at 3 (quoting *Phoenix*, 61 P.2d at 311)). Waiver requires three elements: (1) an existing right, benefit, or advantage; (2) knowledge of its existence; and (3) an intention to relinquish the right. *Rees*, 808 P.2d at 1074–75 (citing *American Savings*, 445 P.2d at 3). Because the issue of intentional relinquishment is likely to be disputed in most cases,[3] it is the central focus in most waiver cases and is the cause of the problem we address today.

On appeal, the question frequently is whether, as a matter of law, intentional relinquishment was or was not shown. Because this legal question is intensely fact dependent, evolution of the general issue by Utah's appellate courts, when combined with our tendency to want to generalize rules from our decisions, has produced the increasingly confusing statements of what is needed to show intent, resulting in the present confusion in the law. The way out of the present confusion is to recognize that each set of facts or new case does not call for a new, more particularized statement of the intentional relinquishment element and the facts needed to prove it. Rather, we retreat to a general statement of the law that can be applied to divergent fact situations by finders of fact without undue appellate attempts at before-the-fact control over the resulting determinations.

■ Again, we state the common ground among our decisions as to what must be shown to prove intentional relinquishment. As we said in *Phoenix*, any waiver "must be distinctly made, although it may be express or implied." 61 P.2d at 311. Because the essence of waiver is relinquishment, the statement in *Phoenix* indicated that the intentional relinquishment of a right must be distinctly made. With this legal requirement, we ensured that waiver would not be found from any particular set of facts unless it was clearly intended. The general statement from *Phoenix* is broad enough to account for the fact that

although the necessary intent may be clear or distinct when there is an express waiver, such intent may be more difficult to prove when waiver is to be implied from conduct or silence. Consistent with this point is the general principle in our case law that "[m]ere silence is not a waiver unless there is some duty or obligation to speak." *Plateau Mining Co.*, 802 P.2d at 730, *quoted in Rees*, 808 P.2d at 1073.

*Hunter* seemed to move from a broad statement of the legal standard to an attempt to elaborate restrictively, albeit in general terms, on what specific facts might be necessary to support a finding of intent. There, we elaborated on the *Phoenix* statement of the law by adding the requirement that "[t]o constitute waiver, one's *actions or conduct* must be distinctly made, must evince in some unequivocal manner an intent to waive, *and* must be inconsistent with any other intent." 669 P.2d at 432 (emphasis added). While the *Hunter* language was not inappropriate under the facts of that case, we think it actually confused the legal element of intentional relinquishment which *Phoenix* had stated must be "distinctly made" with standards of proof addressed to specific actions or conduct. And the *Hunter* language was less than helpful. First, it does not make much sense grammatically when used in conjunction with "actions or conduct," especially when the resulting phrase is to explain what sort of manifestation of intent is required. Second, *Hunter*'s requirements of proof went well beyond the elements of waiver articulated in *Phoenix*. For example, nothing there suggested a need that an act evidencing an intent to relinquish be "unequivocal" or "inconsistent with any other intent."

What is important for us today is that *Hunter*'s language was dictum. Moreover, several months after the *Hunter* decision, we returned to *Phoenix*'s definition of waiver in *Parks v. Zions First National Bank*, 673 P.2d 590 (Utah 1983). In that case, we reaffirmed that a waiver must be

---

**3.** If the evidence is conclusive on the issue of intent, however, waiver may be determined as a matter of law. *See American Savings*, 445 P.2d at 3–4; *Singer Credit Corp. v. Mercer Island Masonry, Inc.*, 13 Wash.App. 877, 538 P.2d 544, 550 (1975).

distinctly made and noted that it is the relinquishment itself, whether express or implied, that must be intentional and distinct. *Id.* at 604–05. In other words, we indicated that a fact finder should assess the totality of the circumstances to determine whether the relinquishment is clearly intended. *See Morgan,* 704 P.2d at 578; *see also Barnard v. Wassermann,* 855 P.2d 243, 246–47 (Utah 1993).

This general statement of the proof that is necessary to show intentional relinquishment is all the specification that we think appropriate. Beyond this, the appellate courts of this state need not attempt to articulate as general principles the specific facts that are required to show intentional relinquishment in particular cases. Over time, factual patterns may emerge from affirmances and reversals of specific decisions that may serve to flesh out the law, but that does not require repeated reformulation of the general statement of the proof necessary to show an intentional relinquishment. In fact, such attempts at reformulation can be detrimental, as the history of appellate case law since *Hunter* demonstrates.

▉ A brief review of the instructions and special interrogatories in the present case demonstrates the pitfalls that can be created by incautious attempts at elaboration of the standard of proof for intentional relinquishment. *Hunter* attempted to elaborate on *Phoenix*'s statement that any waiver, i.e., intentional relinquishment, must be "distinctly made" by adding, "To constitute waiver, one's *actions or conduct* must be distinctly made, must evince in some unequivocal manner an intent to waive, and must be inconsistent with any other intent." 669 P.2d at 432 (emphasis added). Not only does this statement have no support in prior Utah case law,[4] but it is also confusing in several respects.

First, it makes little grammatical sense to say that an act or conduct must be "distinctly made." What is an "indistinct"

act or conduct? Second, the three requirements that *Hunter* states in the conjunctive seem to be little more than redundant rephrasings of the term "distinctly made" from *Phoenix.* In *Rees,* we addressed the redundancy of the *Hunter* elaboration on *Phoenix*'s definition:

> Webster defines "distinctly" as separately, not confusedly, without a blending or merging of one thing with another, clearly, obviously, unequivocally, decidedly. Likewise, "unequivocal" is defined as leaving no doubt, expressing only one meaning, leading to only one conclusion, clear, unambiguous, carrying no implication of later change or revision, conclusive, and absolute. "Inconsistent" is defined as incompatible, incongruous, inharmonious, and (of a person) incoherent or illogical in thought or action.

808 P.2d at 1075 (footnotes omitted). Unfortunately, while *Rees* noted the redundant nature of *Hunter*'s elaboration, it did not focus on the perniciousness of making the three redundant statements in the conjunctive. Yet the very fact that the requirements are stated in the conjunctive has the inevitable effect of suggesting to the reader that each statement means a different thing or else each would not be required. The proof of this proposition is the instructions and interrogatories given the jury in the present case.

Here, the trial court, virtually quoting from *Hunter,* instructed the jury that waiver required that "actions or conduct must be distinctly made, must clearly display in some unequivocal manner any intent to waive, *and* must be inconsistent with any other intent." (Emphasis added.) *See Hunter,* 669 P.2d at 432. Although not following *Hunter*'s language verbatim but incorporating much of its phrasing and all of its substance, the trial court then fashioned the three special interrogatories that had to all be answered in the affirma-

---

4. In *Hunter,* we cited cases from Oregon and Washington to support this proposition. 669 P.2d at 432 (citing *Waterway Terminals,* 406 P.2d at 568; *Wagner,* 621 P.2d at 1284). Al- though these cases do support such a reading, they are not consistent with our language in *Phoenix.*

tive for a finding of waiver.[5] In light of *Rees*'s discussion about the redundancy of *Hunter*'s elaboration on *Phoenix*, this requirement is plainly absurd.

It was the jury's answering only two of the interrogatories in the affirmative that doomed the claim of waiver. Although it seems likely that the jury found waiver under the standards of *Phoenix*, it is impossible to say that with certainty because, in essence, the jury was asked the same question three times, in different phraseology, and answered it "yes" twice and "no" once. Under these circumstances, the error in the instructions and interrogatories is fatal. We cannot tell what the jury would have found under a correct set of instructions.

We recognize that the error was the result of confusion in our case law, apparently leading the trial court to conclude incorrectly that *Hunter*'s fact-specific standards of proof for waiver required the special interrogatories. Today, however, we reject the attempt by *Hunter* and its progeny, both in the court of appeals and here, to elaborate the facts necessary to show intentional relinquishment beyond *Phoenix*'s general statement. This does not mean that we overrule the specific holdings of *Hunter* or *Rees;* rather, we simply reject their attempts to spin out further fact-dependent rules about proof of the intentional relinquishment element.

■■■ On this basis, we hold that there is only one legal standard required to establish waiver under Utah law. We conclude that *Phoenix* properly stated the requirements for waiver:

A waiver is the intentional relinquishment of a known right. To constitute waiver, there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it.

61 P.2d at 311–12, *quoted in American Savings*, 445 P.2d at 3. We further clarify that the intent to relinquish a right must be distinct.[6] Under this legal standard, a fact finder need only determine whether the totality of the circumstances "warrants the inference of relinquishment." *Harris v. Faultfinders, Inc.*, 103 Ill.App.3d 785, 431 N.E.2d 1205, 1209 (1981); *see Morgan*, 704 P.2d at 578; *Wassermann*, 855 P.2d at 246–247. Such a flexible approach is particularly important because waiver is a term which has various meanings depending on the facts and the context in which it is used. 92 C.J.S. *Waiver* 1041 (1955).

On the basis of the foregoing, we find that standards of proof for waiver were inappropriately applied by the trial court in the instant case and that the jury instructions and interrogatories were also improper.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, J., concurs in the result.

■■■■

5. In essence, the interrogatories asked (1) whether Tri–K had shown that Deseret Federal acted to "distinctly relinquish" its right; (2) whether the relinquishment was displayed in an "unequivocal manner"; and (3) whether Deseret Federal acted in such a way that an intent to relinquish the right was inconsistent with any other intent. We note that the first interrogatory appears to state correctly the legal standard for the element of relinquishment, although it does not use the term "intentional."

6. In Utah, a distinct intent to waive must only be shown by a preponderance of the evidence. We recognize that there is an inherent contra-

diction between requiring "distinct" intent while permitting it to be established by a preponderance only. It might make the matter clearer if the burden of persuasion on intent were "clear and convincing," as some jurisdictions require for waiver or estoppel, *see, e.g., Pacific Valley Bank v. Schwenke*, 189 Cal.App.3d 134, 234 Cal. Rptr. 298, 305 (1987) (waiver); *Dressel v. Weeks*, 779 P.2d 324 (Alaska 1989) (estoppel); *Collins Agency v. Hagerott*, 211 Mont. 303, 684 P.2d 487 (1982) (estoppel), and the "distinct" requirement were dropped. We have no occasion, however, to consider that matter today.