HANOVER INSURANCE COMPANY

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY and Humphries-Roy Insurance Agency, Inc.

Civ. A. No. 15555.

United States District Court,
W. D. Louisiana,
Monroe Division.

June 8, 1973.

Ronald L. Davis, Jr., Theus, Grisham, Davis & Leigh, Monroe, La., for plaintiff.

Haynes L. Harkey, Jr., Hayes, Harkey, Smith & Cascio, Monroe, La., for defendants.

## OPINION

DAWKINS, Chief Judge.

Plaintiff, Hanover Insurance Company, instituted this action against St. Paul Fire & Marine Insurance Company, as the errors and omissions insurer of the Humphries-Roy Agency, Inc., of West Monroe, Louisiana. Plaintiff, as principal, alleges that the Agency, as such, failed to carry out a directive to cancel an insurance policy issued by it, the principal, to the agent. Thus, the principal is contending that the agent negligently had caused it to suffer a loss.

Hanover is a foreign insurance corporation authorized to do and doing business in Louisiana, and St. Paul Fire & Marine Insurance Company is a foreign insurance corporation authorized to do and doing business in this State, whereas Humphries-Roy is a corporation domiciled in Ouachita Parish, Louisiana, its principal place of business being located there.

June 1, 1968, Hanover and Humphries-Roy entered into an Agency agreement. However, it seems that previous to this agreement, the parties were operating in a similar business relationship, for the policy involved in this action was issued in 1965 to a Vada Lou Russell, covering a motel and various of its contents, located in or near Columbia, Louisiana. The policy had a loss-payable clause in favor of Riley J. Powell.

In February, 1969, a small windstorm loss set into motion the chain of events which brought this law suit into being. A routine inspection revealed sub-standard wiring, a somewhat deteriorated roof and, after investigation, a report was filed questioning the moral character of the assured. Thereafter, one Simoneaux, resident vice-president of Hanover at New Orleans, directed a letter to McCann, their special agent in Monroe, Louisiana, apprising McCann of the report they had received concerning the risk. He summarized by stating, "Adding it all up, it seems to me we should get off this risk. And it looks like we have the whole line. This risk needs your immediate attention." Upon receiving this correspondence, McCann called one Joyner at the Humphries-Roy Agency office. Joyner was an insurance agent for the Agency.

At this point, it should be noted that there is some discrepancy as to the content of this conversation. However, there is no dispute as to whether it took place. We find as a fact that in this conversation McCann advised Joyner that the company wanted to cancel the policies of the assured. McCann contends that the reason he gave was the physical condition of the building, whereas, Joyner contends that the reason given was the moral character of the assured. Joyner followed this conversation up by correspondence sent to McCann requesting McCann to reconsider. This, of course, could only be referring to the request for the cancellation of the policies. Joyner also sent McCann schedules of other insurance the agency had with Russell. McCann forwarded this to New Orleans.

February 26, 1969, McCann received a memo from Simoneaux. A reasonable interpretation of this document is that the company insisted that the wiring be completely overhauled; that the company

would not be responsible for any further wind damage to the roof; and, at least, that the liability be reduced even after such repairs were made. The document also intimated it was his feeling that the whole account should be cancelled. Upon receiving this correspondence, McCann called Joyner on or about March 3, 1969. Again, there is no dispute as to whether the call took place, or that cancellation was requested, but only the reason or reasons for such, and as to Joyner's reply to such request. McCann stated that Joyner told him he would see to it; however, Joyner testified that he told McCann he would discuss it with his superior, Gordy Roy.

Subsequently, McCann received a letter from S. J. Bird, his fire underwriter in New Orleans, which stated that the cancelled policies had not been received. This letter was dated April 1, 1969. McCann called the agency April 3, 1969, and since neither Roy nor Joyner was in, he talked with Mrs. Carter, the secretary. It is his testimony, and hers, that he asked about cancellation of the Russell policies. Having not reached Joyner April 3, McCann again called and talked with him on April 7, 1969. McCann testified that Joyner assured him he would get the policy cancelled. Joyner testified that he told McCann he did not know what had been done since it was Roy's account and McCann should contact Roy. McCann made notes of these two conversations on the letter dated April 1, from Bird. Thereon, in McCann's handwriting, is a note to the effect that Joyner said he would take care of it immediately.

We find as facts that Hanover wanted these policies cancelled because of the physical risks as well as the moral character of the insured. It is reasonable to conclude that McCann thought and believed that he related to Joyner the fact of the physical risk and assumed it to be the most important factor. On the other hand, it readily may be assumed that Joyner felt the company was concerned with the moral character of the insured, because this would be in the Agency's favor, and felt this factor to be the most important. Nevertheless, from all the physical documents, we must conclude that Joyner was informed and knew Hanover was concerned about the physical risks as well.

The second issue of fact which is controlling in this case is quite troublesome to solve. The question, simply put, is this: Did Joyner tell McCann that he would effect cancellation of the policies, causing McCann to rely on such statement?

Since the only two persons involved in this conversation are diametrically opposed as to what was said, we must decide the issue from all the surrounding circumstances. It must be remembered that Joyner had been a special agent for large insurance companies for approximately ten years before he went to work at Humphries-Roy. During this time, he knew and worked with McCann, who was a special agent for a different company, on matters of mutual benefit. With this before us, we note that Joyner, although employed only for six months by Humphries-Roy before being contacted by McCann, was no novice in the business, and it seems only logical and appropriate that McCann would contact Joyner instead of Roy to effect cancellation of the policies, even though Roy was the person who issued them in 1965. We also take notice of McCann's actions prior to April 7, 1969. During this time he actively corresponded with his home office in New Orleans and also with Joyner about cancelling the policies. These actions convince us that McCann would not simply drop the matter unless Joyner had assured him that cancellation would be taken care of immediately. Therefore, we find that Joyner indeed led McCann to believe he would cancel the policies, and McCann relied upon Joyner to cancel them.

May 11, 1969, the motel was destroyed by fire. After reading of this in a newspaper, McCann contacted Joyner more or less to bask in his elation at being right about cancelling the policies. Theretofore unknown to him, however, Joyner

related that the policies had not been cancelled. Thereafter, Hanover terminated its Agency connection with Humphries-Roy. At that time and since, the Agency has not inquired of Hanover why the Agency relationship was terminated. This is still another factor to be weighed in favor of ruling that Roy and Joyner knew that Hanover was relying upon them to cancel the policies.

What is termed agency at common law is dealt with as "mandate" by the Louisiana Civil Code. Article 3003 of that Code provides:

> "The attorney is responsible not only for unfaithfulness in his management but also for his fault or neglect. . . ."

██ Humphries-Roy and St. Paul deny that there was any contractual or other legal duty to cancel the policies involved here, and, alternatively, plead contributory negligence and assumption of the risk. In the Agency agreement, the only reference to cancellation is found in Section (8), where the company reserves the right to cancel direct any contract of insurance, provided it gives the writing agent appropriate notice. We construe this provision to mean only that the company can cancel policies directly instead of relying totally upon its agent. Defendant contends this clause in no way obligated the Agency to cancel any policies. This is true. Nonetheless, the testimony shows it is the custom in the insurance industry that the agency which issued the insurance be given the opportunity to place that insurance with another company when cancellation is imminent so that it will not lose the business, and to protect its relations with the insured. This is presumably the reason for the proviso that the Agency will be given appropriate notice of such cancellation. The fact that the principal reserves the right to directly cancel a policy does not relieve the agent of its obligation to effect cancellation when so requested by the company, if such is the duty of the agent.

". . . Even specific agreements, however, must be interpreted in the light of the principles which are applicable to the relation of the principal and agent. The existence of the fiduciary relation between the parties, and the duty of the agent not to act for the principal contrary to orders, modify all agency agreements and create rules which are sui generis and which do not apply to contracts in which one party is not an agent for the other. Further, unlike most other contracting parties, the agent may be subject to tort liability to the principal for failure to perform his duties. . . . if he acts disobediently causing harm to the principal's interests, an action of tort will lie against him. . . . In all of these situations his liability extends beyond the area of contractual obligation so that normally the principal will have a choice between maintaining an action for a breach of contract or for a tort. Likewise, even where the agency is purely gratuitous, the agent may become liable to the principal in an action of tort, for a failure of performance upon which the principal has relied. . . ." Restatement of Agency 2d, Chapter 13, "Duties and Liabilities of Agent to Principal," Topic 1, Duties, Introductory note.

In this respect, as in most aspects of Agency, Louisiana law conforms to the prevailing American doctrine. McCurnin v. Kohlmeyer & Co., 347 F.Supp. 573 (E.D.La., 1972). Consequently, defendant's assertion that the Agency was under no duty to cancel the policies as requested by plaintiff is totally devoid of merit. 16 Appleman, Insurance Law and Practice, § 8782:

> "A local insurance agent clothed with general powers should cancel a risk on the direction of his principal and a failure to mention cancellation specifically in the powers conferred on a local insurance agency in its commission does not absolve the agency from cancelling a policy when so directed. It

is the duty of an insurance agent, when ordered peremptorily to cancel a policy, at once to exercise reasonable diligence to execute the order, and his neglect to do so, in the absence of a reasonable excuse, renders him liable to the company for any resulting loss.

\* \* \* \* \* \*

". . . Nor could an agent escape liability for failure to cancel on the ground that the letter received by the agent did not contain an express instruction to that effect, where such agent's own correspondence with the company's general agent indicated that he had been requested to cancel the policy. It is no defense that the special agent who directed the cancellation of the policy had power, himself, to make such cancellation, nor could such agent escape liability because the act of cancellation is gratuitous.

\* \* \* \* \* \*

"Where an insurance company directs its agent to cancel a policy, and he fails to do so, it is not guilty of contributory negligence for failure to cancel the policy itself, so as to relieve the agent of liability for failure to obey directions. Nor could the doctrine of assumption of risk be invoked, as the agent could not insist that the principal be held liable for depending on him to follow its directions, where the insurer had no suspicion that he did not intend to act as directed. . .

"It has been held incompetent, for the purpose of relieving the agent from liability, to prove a custom to procure the cancellation of policies through the broker placing the insurance with the company's agent. If the broker is negligent, this may be attributable to the agent, and the mere fact that the agent directed the broker to cancel would not relieve him of liability. It is considered, rather, the duty of the agent to give notice of cancellation himself. Nor would evidence of a custom to permit a delay be admissible to preclude liability." See also, Gulf Insurance Company, Inc. v. Kolob Corporation, 404 F.2d 115 (10th Cir., 1968).

The Fifth Circuit views the law in the same perspective:

"Finally, in Canada Steamship Lines v. Inland Waterways Corp., 5 Cir., 166 F.2d 57, 59, a suit brought in Louisiana by a principal against his agent for damages for failure to follow his instructions, this Court, holding the agent liable, discussed fully the principles controlling in suits between principal and agent of the kind presented here. There, stating:

'The general principles of the law of agency as they apply here, are not in confusion. . . . They leave in no doubt that where, as here, an agent has been given general instructions to clear a shipment, which instructions could be carried out in the interest of the principal without incurring duty, if the agent, without returning for more specific instructions, assumes to take a course in carrying the instructions out which subjects the shipment to duty, the agent, and *not the principal*, must bear the loss.' "

Manufacturers Casualty Insurance Company v. Martin-Lebreton Insurance Agency, 242 F.2d 951 (5th Cir., 1957), cert. denied 355 U.S. 870, 78 S.Ct. 121, 2 L.Ed.2d 76.

The single Louisiana case on this point we are able to locate in our research, where a situation similar to the instant situation was found, is Harvey v. General Guaranty Insurance Company, 201 So.2d 689 (La.App. 3rd Cir., 1967). There the Court stated that under the practice of the insurance company it was the duty of the company and not of the local agent to issue written notice to the insured when the policy was cancelled under the peculiar circumstances of that case.

Here, there was a specific request that the agent cancel the policies, and the agent stated he would do so, thus causing the principal to rely upon his assertion. The procedure used by Hanover to accomplish cancellation was not at all out of ordinary practice. The method used

was to have the special agent in the area investigate the matter and then confer with and request the local agency to cancel the policy. In these circumstances, we cannot say that this procedure is unusual or not within the custom of the business. Oral requests for cancellation are not uncommon.

 We have found no Louisiana jurisprudence pertaining to whether defendant would be relieved of liability if plaintiff were contributorily negligent or assumed the risk. We believe, therefore, that Louisiana would follow the prevailing jurisprudence in the nation concerning relinquishment of the insurance agent from liability to his principal, because of some fault which might be attributable to the principal or assumption of the risk by the latter. The prevailing view is found in *Kolob, supra:*

> "The Supreme Court of Utah in Phoenix Ins. Co. v. Heath, 90 Utah 187, 61 P.2d 308, 106 A.L.R. 1391, held that an insurance company may direct an agent to cancel a policy and when it does so, it is the duty of the agent 'forthwith to do so,' and if he negligently delays in following these instructions and a loss occurs, he becomes liable to the insurer . . . The same rule is followed in other states.
>
> \* \* \* \* \* \*
>
> "It is no defense, as was urged by appellee, for the agent or general agent under these circumstances to assert that it was within the power of the insurance company to itself cancel the policy. The company also had the right to cancel in Phoenix Ins. Co. v. Heath, supra, and the court, although it did not discuss this issue, said that under these circumstances when the agent was requested to cancel and he did not do so promptly, he could become liable. Courts in other jurisdictions have considered this issue [Citations omitted]. Thus there is no issue present as to appellant's 'contributory

negligence' in not itself cancelling as it had the right to rely on the appellee to do so." At 404 F.2d p. 118.

 Consequently, we hold that the defendant is legally indebted to plaintiff in the sum of $38,909.06, with interest at the legal rate from date of judicial demand until paid. Defendant also is taxed with Court costs incurred in this suit.