Therle **OLDENBURG, Plaintiff-Appellee,**

v.

Boyce Robertson **CLARK et al., Defendants-Appellants.**

No. 73–1398.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Oct. 15, 1973.

Decided Jan. 3, 1974.

Gregory Fess, Denver, Colo. (Hatch, McRae & Richardson, Salt Lake City, Utah, on the brief) for plaintiff-appellee.

H. Wayne Wadsworth, Salt Lake City, Utah (Hanson, Brandt & Wadsworth, Salt Lake City, Utah, on the brief) for defendants-appellants.

Before HILL and BARRETT, Circuit Judges, and TALBOT SMITH*, Senior District Judge.

TALBOT SMITH, Senior District Judge.

The appellants in this diversity action, defendants in the trial court, seek reversal of the lower court judgment declaring them liable to the appellee for certain special and general damages resulting from a fall appellee suffered in a building owned and maintained by the appellants.

In 1968 the appellants acquired the multi-storied structure located at 610 East South Temple in Salt Lake City, and shortly thereafter remodeled the lower level of the building in order to rent out the area. Included in the remodeling was the construction of a wooden banister along the staircase leading to the lower level. The banister extended from the top of the stairs to a point halfway down the staircase, where the stairs made a ninety degree turn before continuing down to the lower level. At the turn a wooden post was installed, and the banister then continued at a right angle down the length of the second half of the steps. The stairs angled around the turn with two wedge-shaped steps.

On October 7, 1970, the appellee, a field representative for the American Cancer Society, was in the building assisting the local chapter of the society, which had rented space on the lower level. At one point, the appellee went up the stairs to the main floor and a moment later started to come back downstairs to the society's offices. As she came to the turn in the stairs, the appellee slipped and fell, suffering a Colles fracture of the left forearm. Later in the day she was hospitalized, complaining of nausea and rapid heartbeat. Subsequently appellee filed suit against the appellants, alleging that she had sustained permanent injuries in the fall, and charging appellants with negligence in the construction and maintenance of the stairway.

After the presentation of all the evidence at trial, the District Court judge granted a motion by the appellee for a directed verdict on the issue of liability, finding that the appellants had been negligent in their maintenance of the stairs and that the appellee had been free of contributory negligence when she fell down the stairs. Only the issue of damages was submitted to the jury, which returned a verdict for the appellee for $952.96 in special damages and $24,000 in general damages. Appellants' motion for a new trial was denied.

* Hon. Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

Appellants make three contentions on appeal. First, they urge that the trial court erred in directing a verdict on the issues of negligence and contributory negligence. Second, they assert that the trial judge committed reversible error in his instructions to the jury on damages by making certain allegedly prejudicial statements. Finally, appellants contend that the award of $24,000 in general damages was excessive.

At the outset we note that in this circuit the sufficiency of the evidence to go to the jury in a diversity case is a matter of federal law,[1] as is the grant or refusal of a new trial.[2] In considering the motion for a directed verdict the trial court should view all of the proper evidence in the record,[3] and in the light most favorable to the party against whom the motion is made, Weeks v. Latter-Day Saints Hospital, 418 F.2d 1035 (10th Cir. 1969). Such, as well, is the duty of the appellate court reviewing the action. Gulf Ins. Co. v. Kolob Corp., 404 F.2d 115 (10th Cir. 1968).

The standard employed upon review we expressed in Taylor v. National Trailer Convoy, Inc., 433 F.2d 569 (10th Cir. 1970), in the following terms:

"It is proper for a court to withdraw a case from the jury and direct a verdict only in limited circumstances. A directed verdict is proper only where the evidence and all the inferences to be drawn therefrom are so patent that minds of reasonable men could not differ as to the conclusions to be drawn therefrom." 433 F.2d at 571–572.

See also Kiner v. Northcutt, 424 F.2d 222 (10th Cir. 1970) (direct verdict when evidence "so overwhelmingly preponderant . . . as to permit no other rational conclusion"); Weeks v. Latter-Day Saints Hospital, 418 F.2d 1035 (10th Cir. 1969) (direct verdict "unless reasonable fair-minded persons could form different conclusions"); Adams v. Powell, 351 F.2d 273 (10th Cir. 1965) (determine whether evidence would "cause reasonable minds to honestly differ"); Miller v. Brazel, 300 F.2d 283 (10th Cir. 1962) (deny motion when "fair minded persons may form different opinions and draw different conclusions"); Transcontinental Bus System, Inc. v. Taylor, 265 F.2d 913 (10th Cir. 1959) (deny motion when "reasonable minded persons . . . may reach different conclusions").

We recognize, of course, that the rule thus easily stated is, in its application, "always perplexing and necessarily subject to the human equation,"[4] and it is in such context and against such background that we review the record in the light of appellants' claim that they were improperly denied their right to trial by jury.

The testimony taken, and the inferences properly drawable therefrom, involve the type of disputation frequently encountered in the slip and fall cases, where each of the elements of proof is

---

1. Kinder v. Northcutt, 424 F.2d 222, 223 (10th Cir. 1970); 9 Wright and Miller, Fed.Prac. and Proced. § 2525, at 551–554 (1971). See also Byrd v. Blue Ridge Electric Cooperative, 356 U.S. 525, 538, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1958): "It cannot be gainsaid that there is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in federal courts." *Per contra*, Moskowitz v. Peariso, 458 F.2d 240 (6th Cir. 1972). The state-federal point is not critical in this case in view of the holdings of the Utah court in Flynn v. W. P. Harlin Const. Co., 29 Utah 2d 327, 509 P.2d 356 (1973); Hindmarsh v.

O. P. Skaggs Foodliner, 21 Utah 2d 413, 416 P.2d 410 (1968).

2. Holmes v. Wack, 464 F.2d 86 (10th Cir. 1972); 6A Moore on Federal Practice ¶ 59.04 [1] (1973).

3. Boeing Company v. Shipman, 411 F.2d 365 (5th Cir. 1969); Young v. Vincent, 310 F.2d 709 (10th Cir. 1962); 5A Moore on Federal Practice ¶ 50.02 [1] (1971); 9 Wright and Miller, Federal Prac. and Proced. § 2529, at 571–573 (1971), and cases therein cited.

4. Kiner v. Northcutt, *supra*, quoting High Voltage Engineering Corp. v. Pierce, 359 F.2d 33, 38 (10th Cir. 1966).

challenged or contradicted, either on the testimonial showings, the physical facts, or both, together with inferences flowing therefrom, all leading to opposing conclusions. Here the testimony principally concerned the handrail on the stairs, the carpeting, the lighting and the configuration and width of the stairs themselves.

The handrail, or banister, did not run down the continuous length of the stairs, as required by the local Building Code, and the interruption allegedly contributed to appellee's fall. The appellants, however, stress that where the handrail was interrupted, the newel post (constituting the interruption) itself provided "ample support for someone negotiating the stairs either up or down".[5] They contend that the violation, if such, was thus "technical" only, and that the interruption was not a proximate cause of the fall. The appellee also introduced the testimony of three female co-employees of the appellee who had suffered falls on these stairs, and a mail carrier who had nearly fallen. Falls and near-falls had been brought to the attention of the appellants, as well as an insurance company recommendation that the stairs be modified in certain particulars. Appellants sought to counter these showings with testimony of another tenant of the building, one Marilyn P. Harvey, the first tenant in this rental area, that she not only had never experienced difficulty in using the stairway, but she had never received such complaints from any of her clients, despite the fact that on one occasion (a Christmas "open house") some hundred fifty to two hundred people had used the stairway in question.

Charges, and counters thereto, were also made with respect to the carpeting. Appellee pointed out that it was all of one color and therefore allegedly deceptive; appellants argued that such mono-color is usual and customary in stair carpeting. Also, with respect to the car-peting, appellee asserted that she "slipped" off the edge of one of the stairs at the turn; but it was appellants' showing that it was a tight-woven carpet, "considered a safe type of material for that type of installation" thus seeking to convince the jury that appellee presumably did not "slip" off the edge but rather failed to place her foot properly on the stair because she was not watching where she was going.

As to appellee's contributory negligence, appellee testified that she descended the steps with care but they narrowed somewhat at the turn, and that, as we have noted, the carpet was slippery and was "a difficult color to see the edge of the stairs" (it was a bright red), particularly since the lighting was not good. Appellants argued, however, while not conceding deficiencies in stairs, carpeting, or lighting, that whatever the conditions were, appellee was completely familiar with them, since she had ascended the stairs in safety only a few moments before. Appellants also argued that it was clear from the photographs in evidence that the steps, although narrowed at the turns, remained as wide as the tread of the other steps, and that there was adequate place "to put your feet if you look." In addition it was pointed out that had appellee felt any apprehension about the turn at the stairs, she knew from her recent previous ascent thereof that there was ample space for the placing of her feet at the other (or wall side) of the stairs, which space she did not attempt to employ. Appellants' argument may be summarized as being that a jury might well find upon the evidence before it, "that a reasonable person could negotiate that stairway without any problem."

■ From this review of the physical facts, the testimony with respect thereto, and the inferences reasonably to be drawn therefrom, all viewed in the light most favorable to the appellants, we are satisfied that reasonable persons exer-

5. Tr. 178.

cising impartial judgment could have reached differing conclusions. Obviously, Marilyn P. Harvey's testimony was probative on the basic general issue of the safety of the stairs and, if given credence by the jury, might well have rebutted the inferences to be drawn from the appellee's evidence, particularly that of appellee's co-employees and the mail carrier. It was error thus to withdraw the case from the jury.

The appellants complain, as well, of several aspects of the court's instruction on damages. We will, since the case must be re-tried, comment only on those that may reoccur.

It is complained that the court erred in mentioning to the jury the amount of damages claimed in the *ad damnum*. The federal cases addressing this issue have held that it is not improper for the trial judge to advise the jury that the damages awarded may not exceed the specified amount of the prayer, provided it is made clear that the sum is not suggestive of a proper award, but is a limit beyond which the jury cannot go. Chesapeake & O. R. v. Carnahan, 241 U.S. 241, 36 S.Ct. 594, 60 L. Ed. 979 (1916); Dowell, Inc. v. Jowers, 182 F.2d 576 (5th Cir. 1950); Annot., 2 A.L.R.2d 454.

Appellants urge also that the illustrations used by the trial judge in explaining the process for determining money damages evoked prejudice against the appellants.[6] The issue here is whether the jurors would associate the gravity of these injuries used as illustrative examples of the difficulty of assessing money damages for personal injuries with the injuries suffered by the appellee. Reading the instructions as a whole, we find it unlikely that the jury would be so misled or confused. We find no error in the instructions given.

Reversed and remanded for new trial.

6. In commenting on the difficulty of placing a dollar value on personal injuries the court observed, "Sometimes plaintiffs come in here with a leg off or both arms off or a loss of vision in one eye, all sorts of injuries we have coming through here." Tr. 201.