DETROIT HEATING & LIGHTING COMPANY, APPELLANT, *v.* SIDNEY STEVENS, RESPONDENT.

1. *Contract—Breach—Payment—Cross-Complaint—Averments.*
    Defendant cannot, at the trial, without amendment, elect to rescind a contract and recover judgment thereon, when in the

16 UTAH—12

| 16 | 177 |
| 19 | 148 |
| 19 | 149 |
| 16 | 177 |
| s20 | 245 |
| 16 | 177 |
| 28 | 428 |
| 28 | 429 |

cross-complaint he has alleged a breach and damages therefor. When an action is based upon a rescission of the contract, the election to rescind must be clearly averred.

2. *Id.—Right to Rescind Waived.*

After a vendee has made repeated payments on a heater, with knowledge of its defects, and after making changes in it, and treating it as his own, and without any expressed intention to rescind the contract until the lapse of three years and seven months, and until the building in which it stood has been burned, the vendee cannot be heard to say he did not accept it, and give notice to the vendor to take it away, and maintain a suit to recover the price paid. Nor can he rescind the contract. By such conduct he waived his right to rescind. though not his right to sue upon the vendor's guaranty for damages in consequence of its breach, since by the terms of the contract the right to sue on the warranty survived the acceptance of the heater.

3. *Id —Conditional Sale—Title.*

Where the contract provides that the title to a heater shall remain in the vendor until the purchase price should be fully paid, and that in case of default the vendor might take possession, and remove the same, and retain any part of the price paid, the contract becomes a conditional sale, and the condition is for the benefit of the vendor, who has the right to waive it in case payment should not be made, and regard the title as in the vendee if accepted by him; and it is not in the power of the vendee to take advantage of the condition, and regard the title as in the plaintiff, and rescind the contract, or maintain he had not accepted the heater, and refuse to pay for it for the same reason.

(No. 875.    Decided March 10, 1898.)

Appeal from the Second district court, Weber county. H. H. Rolapp, *Judge.*

Action by the Detroit Heating & Lighting Company against Sidney Stevens on a contract. Defendant had judgment, and plaintiff appeals. *Reversed.*

It appears from this record that on November 11, 1890,

the plaintiff, a corporation engaged in manufacturing and selling heaters and other apparatus in Detroit, Mich., agreed to furnish and erect for defendant in his carriage and implement building at Ogden, Utah, a hot-water heater, with all the usual and necessary attachments and connections. The contract contained the following provisions: "Upon notification from us that the work herein specified is complete, it shall be promptly inspected, and accepted or rejected, so that our man, while still on the premises, may, without delay, complete it, or remedy any defect that may appear, after which you are to give said man written acceptance of the work herein specified, it being agreed that such acceptance shall not be deemed a waiver of our guaranties. Should you, or your agents, contractors, or others acting under them, desire to use any part of this apparatus during its construction, prior to its inspection and acceptance, permission is hereby granted under the following conditions: that the apparatus is to be operated entirely at the risk and expense of the owner and delivered to us again in as good condition as found. The owner shall provide an adequate and properly located chimney flue, introduce water to the basement within five feet of boiler, and provide a suitable place, with a good brick and cement foundation, for the heater to stand in basement or cellar, so that the required circulation shall be above the heater. When the apparatus herein proposed to be furnished is completed in accordance with the conditions hereof, we guaranty that it shall permit water to circulate in all parts without pressure, excepting weight of water contained in apparatus, and that it shall be capable of warming all rooms mentioned therein, when the outside temperature is at zero, provided our printed instructions for the manage-ment of the heater are followed, and that good coal of

suitable size is used. If, after this apparatus shall have been accepted by you, any part thereof constructed by us under this proposal shall fail to accomplish the guaranty herein contained by reason of any defect in the same, we agree to remedy such defect at our own cost, within a reasonable time after receiving written notice of such defect. The sum of seventeen hundred and ninety ($1,-790) dollars to be paid in full on completion of said contract, and the job in running order to the acceptance of purchaser within ten days after completion." It further appears that plaintiff erected the heater in the defendant's building in January, 1891; that the defendant paid on the same $1,371.48, as follows: On January 30, 1891, $500; December 15, 1891, $556.72; December 15, 1892, $294.76; December 15, 1892, $10; January 30, 1893, $10. Of this amount, $323.80 was freight paid for plaintiff at its request. It also appears that defendant at different times made objections to the heater, and only used it at times. Both plaintiff and defendant made changes in the apparatus at considerable cost until September 24, 1894, when the building in which it was, burned, and the defendant not only then refused to make further payment, but notified the plaintiff to remove it from his premises, and to return the money paid upon it. The plaintiff then filed its complaint, which alleged, among other things, that it had performed the contract on its part, and that the defendant owed $418.52 upon the price, with interest. The defendant answered, denying performance on the part of the plaintiff, and alleging performance on his part, and denying the indebtedness claimed, or any part of it. Defendant also filed a cross complaint, in which he averred the same contract, and alleged the payment of the $1,371.48 thereon to the plaintiff, and a breach by it, and damages by reason thereof in the sum of $3,721.48, with interest,

specifying the items constituting the amount. Upon the trial of the case by the court the defendant elected to rely upon a rescission of the contract, and asked judgment against plaintiff for the amount paid on the contract, with interest. The court found for the defendant in the sum of $1,627.47, the sum paid, with interest, and gave judgment for that amount, to which the plaintiff excepted, and from which it has taken this appeal.

*J. D. Murphy,* for appellant.

*L. R. Rhodes,* for respondent.

ZANE, C. J. (after stating the case):

In view of the cause of action set out by the defendant in his cross complaint, and of the conceded facts of the case, and those as to which there is no room for controversy, did the court err in finding the apparatus was not accepted, or that the contract was rescinded, and in giving judgment against the plaintiff for $1,627.47, the amount paid on the contract, and interest? The defendant, in his cross complaint, admits the contract set out in the plaintiff's complaint, and alleges that he paid the $1,371.48 on the contract, but alleges a breach by the plaintiff in not furnishing a complete and perfect heater as it required, alleges damages in the sum paid, and other damages specified aggregating the sum demanded. A rescission or forfeiture of the contract is not alleged. The cross complaint is for damages for its breach. No election to rescind and cut off plaintiff's rights is averred. Where an action is based upon the rescission of a contract and a forfeiture of the rights of a party to it, the election to rescind must be specifically and clearly averred. After a contract has been recognized and acted upon by the parties to it, the law does not favor a rescission

by one of the parties, and the forfeiture of the rights of the other. We will, however, consider the judgment of the court with respect to the facts. Albert D. Ward testified that he was a hot-water engineer and steam fitter; that he erected the heating plant in question in the winter of 1890 and 1891, according to plans and specifications contained in the contract; and finished it in January; that he made a test of it by filling it with hot water, and firing it; that it was not defective to his knowledge; that it was changed after it was completed by putting a brick smoke flue in place of a galvanized iron one; that it was done at the request of the plaintiff; that this was done for the reason that defendant had covered the iron one with asbestos plaster, and did not have the hangers strengthened, and it fell; that Stevens also used a very poor quality of soft coal that would clog up the heater and smoke pipe. The defendant testified that Mr. Ward put in all the apparatus without any interference on his part; that he thought Ward was there a month or six weeks; that he thought they could fire it up; it would work; that when cold weather came it would not heat the building; it smoked. In answer to the question, "Will you say that you ever told them to take it out until after your building had been burned up and destroyed," he said, "I will say that I wrote to them to the effect that they must take it out, or make it work." He said he "could not give the date; the letters would show." The heater was put up in January, 1891, and Charles D. Golding, a witness called by the defendant, testified that he occupied an office in the building from November, 1890, to July, 1894, and that so far as his office was concerned, the heating apparatus in the building was very unsatisfactory; it did not heat up the office so as to be comfortable; and that he was obliged to put in a stove. Other witnesses

who occupied offices in the building testified they could not get sufficient heat from the furnace in cold weather, and the defendant testified to the same effect, and also that the furnace smoked and the pipes leaked. On February 9, 1893, the defendant wrote plaintiff suggesting changes that might make him safe from fire, and prevent leakage. In the same letter defendant also requested plaintiff to send bottom doors, brushes for cleaning pipes. finer grates, and hangers to put on pipes. The letter concluded: "We want this done. Then I think we will be all right, and will accept the job, as I think it will give reasonable satisfaction." This letter was written more than two years after the heater had been set up in the building, and after the use of it by the defendant had been commenced, and after he had made payments at different times on the heater amounting to $1,371.48. About a month after that, the defendant wrote the plaintiff another letter, in which he said that, since Mr. Baskerville overhauled "it, there is considerable improvement. making us feel that it may possibly be made a success. With this end in view, considering the distance between us, we are willing to use our utmost endeavor to make it so, but do not feel like paying any more until it is in proper shape as stated, but realize the matter ought to be closed up one way or another. We will do the best we can in the way of cutting down the costs, and paying balance to you instead of contractors, but we must have something near a satisfactory plant." The defendant wrote again on January 16, 1894: "We have not used the heater this winter. Cold weather set in just about the time the job was to be done. We had to put in the heating stoves until we could conveniently have it done. * * * You are not more anxious to have it done than we are, as our money is lying idle and we are getting

no good from it; but when it is done next I want it done right, and want to watch the thing personally, at a time when I can spare the time to look after it." So the correspondence between the plaintiff and defendant continued, the former asking the latter to pay the balance due on the heater, and the latter insisting that the heater should be made to answer the requirements of the contract, until September 24, 1894, when the defendant wrote the plaintiff, notifying it the building in which the heater was used had been entirely destroyed by fire, and requesting plaintiff to remove the heater and apparatus, as it would be in the way of the erection of a new building. This last letter was written as much as three years and seven months after the heater had been erected in defendant's building, and after it had been completed, as the engineer testified, and he had filled it with hot water, and had fired it, and saw no defect in it. The contract provided that upon notification from the plaintiff that the work was complete, it should be promptly inspected, and accepted or rejected, so that plaintiff's engineer could promptly remedy any defect in it; and it further provided that the acceptance should not be deemed a waiver of the guaranty in the contract. In case the defendant might wish to use any part of the apparatus during construction, prior to its inspection and acceptance, it was provided that such operation should be at the risk and expense of the defendant, and that it should be returned to the plaintiff again in as good condition as when taken. Instead of refusing to accept the heater, the defendant took charge of it, and made changes in it. He covered the iron smoke flue with asbestos, without strengthening the hangers, so that it fell. The defendant did not only fail to elect to rescind the contract until after the building burned, but as late as January 16, 1894, he expressed an intention to

superintend the improvement of the apparatus in person when a thaw should come. And in his letter to plaintiff on September 24, 1894, written after the building had been burned, he said that he had expected the heater would be put in condition before winter, " so that it would work, and do 'some' good." After making repeated payments upon it, with knowledge of its defects, and after making changes in it, and treating it as his own, and without any expressed intention to rescind the contract until the lapse of three years and seven months, and until the building in which it stood had been burned, the defendant cannot be heard to say he did not accept the heater, and give notice to the plaintiff to take it away, and maintain a suit to recover the price paid. Nor can he rescind the contract. By such conduct he waived his right to rescind, though not his right to sue upon the plaintiff's guaranty for damages in consequence of its breach. Waiver of defendant's right to reject or rescind the contract and to return the heater was one thing; waiver of his right to recover damages for a breach of the warranty was quite a different thing. The right to sue on the warranty survived the acceptance of the apparatus. The general rule is that a purchaser, with time for examination of the article, or for examination and trial, after delivery, must reject during or at the end of the time, or be held to have accepted; or, if the time for examination or for examination and trial is not fixed, he will be held to have accepted unless he gives notice within a reasonable time of his rejection. The purchaser's right to reject or to rescind and return the property may be lost by acts inconsistent with the ownership of the vendor, or by continued use of the article after knowledge of its defects. *Underwood* v. *Wolf* (Ill. Sup.), 23 N. E. 598; *Manufacturing Co.* v. *Moore* (Kan. Sup.), 26 Pac. 703; *Iron Works* v.

*Dodsworth*, 57 Fed. 556; *Gridley* v. *Tobacco Co.*, 71 Mich. 528.

The contract also provided that the title to the heater should remain in the plaintiff until the purchase price should be fully paid, and that, in case of default, the plaintiff might take possession, and remove the same, and retain any part of the price received. This made the contract a conditional sale, and the condition was for the benefit of the plaintiff. It had the right to waive it in case payment should not be made, and regard the title as in the defendant if accepted by him. It was not in the power of the defendant to take advantage of the condition, and regard the title as in the plaintiff, and rescind the contract, or maintain he had not accepted the heater, and refuse to pay for it, for the same reason. The plaintiff did not claim the benefit of the condition, but elected to treat the title as in the defendant, and bring suit for the balance due on the purchase price. The defendant relied upon the contract in his cross complaint, and alleged damages amounting to $3,721.48 for its breach, but on the trial he expressly elected to rely upon a rescission of the contract, and to waive any claim for damages, without amending his cross complaint. The court found that the plaintiff did not comply with the contract; that defendant never accepted the heating apparatus; and that defendant, before commencing the action, notified plaintiff that the apparatus was subject to its order, and demanded a return of the amount paid. The judgment was based upon the non-acceptance of the heater and the election of the defendant to rescind the contract and to demand the amount paid upon it. The facts upon which the defendant relied in his complaint and on the trial, and those upon which the court based its judgment, when all considered together, are somewhat uncertain and con-

fusing. But upon the conceded facts, and upon those as to which there is no room for a difference of opinion as to their existence, from the evidence, we must hold, as a matter of law, that the defendant accepted the heater, and had no right to elect to rescind the contract as he did; and that plaintiff must recover, if at all, damages for a breach of the contract. In finding that the defendant did not accept the heater, and in basing its judgment upon the assumption that the contract was rescinded, we must hold the court erred. The defendant should have been held to rely upon the warranty contained in the contract, and confined to a recovery of damages for its breach. The judgment of the court below is reversed, and the cause is remanded, with directions to grant a new trial. Costs are awarded to the plaintiff.

BARTCH and MINER, JJ., concur.