2005 UT App 233

CONTINENTAL INSURANCE COMPA-
NY, a subsidiary of CNA Financial Cor-
poration, Plaintiff and Appellee,

v.

Joseph O. KINGSTON and D.U. Company,
Inc., Defendants and Appellants.

No. 20030936–CA.

Court of Appeals of Utah.

May 26, 2005.

Carl E. Kingston and F. Mark Hansen, Mark Hansen PC, Salt Lake City, for Appellants.

John N. Braithwaite, Stephen J. Trayner, H. Scott Jacobson, and Robert W. Harrow, Strong & Hanni, Salt Lake City, for Appellee.

Before Judges GREENWOOD, ORME, and THORNE.

## OPINION

ORME, Judge:

¶ 1 Joseph O. Kingston and D.U. Company, Inc. appeal the trial court's grant of summary judgment in favor of Continental Insurance Company premised on a theory of misrepresentation in an insurance application. We conclude the insurance company waived any right it had to rescind the policy and reverse the summary judgment.

## BACKGROUND

¶ 2 Except as otherwise noted, the key facts are not in dispute and may be summarized as follows. Joseph O. Kingston bought a home built in the 1800s in Bountiful, Utah, from D.U. Company, Inc. (DUC). Kingston subsequently applied for automobile and home insurance from Jackson Insurance Agency, an agent of Continental Insurance Company. Brent Christensen, an employee of Jackson Insurance Agency, helped Kingston prepare the insurance policy application. One of the questions on the application asked for the year Kingston's home was built, and Christensen entered the year "1990," rather than the actual year the home was built.[1] Continental approved Kingston's application and issued him an insurance policy on the home.

¶ 3 From March 1994 through July 4, 1997, Kingston timely paid all premiums on the insurance policy. On July 4, 1997, Kingston's home caught fire, causing substantial damage to the structure and interior of the home. Two entities, Wasatch Claims Service and Fire Investigations, were retained by Continental to assess the loss to Kingston's home. Immediately after the fire occurred they inspected the home and, one week later, Fire Investigations issued a letter to Continental informing Continental that "[t]he home is over one hundred years old." At about the same time, an agent of Continental advised Kingston that the loss was covered under the policy. As a result, Kingston hired Utah Disaster Kleenup to perform demolition work on the home. Continental paid for the demolition work done on the home and authorized restorative work to be done. In addition, Continental authorized Kingston to move into temporary housing, paid for Kingston's temporary living expenses, and told Kingston to inventory his personal property losses, for which it would also pay.

¶ 4 In January of 1998, pursuant to a policy provision, Continental examined Kingston under oath as part of its claims investigation. Around this time, Continental pulled Kingston's original insurance application and discovered that the application listed "1990" as the year the home was built. As a result, in March of 1998, Continental filed a complaint against Kingston and DUC in Third District Court, seeking to rescind the insurance policy on the ground that Kingston had made material misrepresentations on the applica-

---

1. The parties dispute why Christensen entered "1990" as the year of construction, instead of entering the actual year the home was built, i.e., sometime in the 1800s. Kingston maintains that he told Christensen that the home was built in the 1800s, but had been extensively remodeled around 1990, and that Christensen chose to put 1990 as the year the home was built. Continental, on the other hand, alleges that Kingston misinformed Christensen that the home was built in 1990 and thus Christensen inserted the year "1990."

tion.[2] In that same month it sent a reservation of rights letter to Kingston and renewed Kingston's policy for an additional year. Kingston and DUC counterclaimed for breach of the insurance contract.

¶ 5 Subsequently, DUC filed a motion for partial summary judgment, which Kingston joined, and Continental filed a cross-motion for summary judgment. Both motions were denied by the trial court. After additional discovery, Continental renewed its motion for summary judgment alleging that, as a matter of law, Kingston made a material misrepresentation on his application. Kingston and DUC opposed Continental's motion on multiple grounds, including waiver. The trial court granted Continental's motion and dismissed Kingston and DUC's counterclaims, declaring that Continental had a right to rescind Kingston's policy based on the misrepresentation made in the application.

¶ 6 Kingston and DUC now appeal the denial of DUC's motion for partial summary judgment and the granting of Continental's motion for summary judgment. DUC and Kingston also appeal from the trial court's rulings on a number of other matters, including the admissibility of certain testimony of Kathleen Wentzel and Brent Christensen, as well as an award of costs to Continental. We need not reach these other matters in view of our disposition.[3]

## ISSUES AND STANDARD OF REVIEW

¶ 7 On appeal, Kingston and DUC[4] (hereinafter collectively "Kingston") argue that the trial court should have granted DUC's motion for partial summary judgment because Continental waived its right to rescind the policy as demonstrated by its postfire course of conduct. Kingston additionally argues that the trial court erred in granting Continental's motion for summary judgment because it should not have reached the issue of whether Kingston made a material misrepresentation given that Continental waived its right to rescind the policy. He argues that waiver is conclusively demonstrated by Continental's knowledge of the home's actual age, its intent to continue Kingston's policy despite knowing of the home's age, and its postfire course of conduct.[5]

¶ 8 To uphold a trial court's grant of summary judgment, we must conclude that there are " 'no genuine issue[s] as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' " *Guardian Title Co. v. Mitchell,* 2002 UT 63, ¶ 12, 54 P.3d 130 (quoting Utah R. Civ. P. 56(c)). In this case, the material facts are not in dispute. Thus, we must consider whether the trial court was correct in holding that Continental was entitled to rescind the policy as a matter of law because of a material misrepresentation made on the policy application. The answer, as will be seen, turns on whether Continental was barred from rescinding the policy because, as a matter of law, it waived that right. We review the trial court's legal conclusions under a correction of

---

2. CNA Insurance Companies filed the original complaint in this action in March of 1998. However, the trial court subsequently granted leave to substitute Continental Insurance Company, a subsidiary of CNA, as the real party in interest, based on a stipulation that the other parties would not be prejudiced by the substitution. Thus, Appellee in this action is referred to exclusively as Continental.

3. Both parties submitted motions to supplement the record pursuant to rules 11 and 23 of the Utah Rules of Appellate Procedure. Both of those motions are hereby denied on the ground that neither of the items submitted by the parties were part of the record before the trial court, nor has either party demonstrated that "anything material to either party is omitted from the record by error or accident or is misstated." Utah R.App. P. 11(h).

4. Continental argues that DUC did not have standing to file the motion for partial summary judgment because it was never a party to the insurance policy. However, in May of 2001, Kingston assigned any claims he had against Continental to DUC, thus effectively giving DUC the right to raise claims against Continental.

5. Continental additionally argues that Kingston misrepresented that the home was a single-family dwelling, when the home was actually used as a multi-family dwelling, and that Kingston misrepresented whether the home had previously been insured. However, in its motion for summary judgment, Continental limited its material misrepresentation claim to the age of the home. Thus, we confine our discussion to the thrust of the motion for summary judgment, i.e., whether the age of the home was materially misrepresented.

error standard. *See Ahlstrom v. Salt Lake City Corp.*, 2003 UT 4, ¶ 5, 73 P.3d 315.

## ANALYSIS

¶ 9 An insurer's reliance upon material misrepresentations made by an insured enables an insurer to rescind a contract at its election.[6] *See Perkins v. Great–West Life Assurance Co.*, 814 P.2d 1125, 1130 (Utah Ct.App.1991) (stating that contract is voidable where material misrepresentations are made by insured and insurer relies on those misrepresentations); Utah Code Ann. § 31A–21–105(2) (2003) (describing when misrepresentations affect an insurer's obligations under an insurance policy). However, an insurer may forfeit the right to rescind a contract if it intentionally relinquishes that right or if its course of conduct demonstrates that it intended to relinquish that right. *See generally Soter's, Inc. v. Deseret Fed. Sav. & Loan*, 857 P.2d 935, 940–41 (Utah 1993). Once a party intentionally relinquishes the right to rescind, it is thereafter prohibited from asserting that right. *See generally id.*

¶ 10 In order to determine whether a party has waived its right to rescind a contract, the court must find that an "intentional relinquishment of a known right" has been made. *Phoenix Ins. Co. v. Heath*, 90 Utah 187, 61 P.2d 308, 311 (1936). In *Soter's*, the Utah Supreme Court explained that " '[t]o constitute waiver, there must be an existing right, benefit, or advantage, a knowledge of its existence, and an intention to relinquish it.' " 857 P.2d at 938 (quoting *Phoenix*, 61 P.2d at 311–12). The Court in *Soter's* further noted "that the intent to relinquish a right must be distinct." *Id.*

¶ 11 On appeal, the question of waiver frequently turns upon whether a party had the requisite intent to waive the right in question. *See id.* at 940. To make this determination a court must consider all of the relevant facts before it and base its decision upon the "totality of the circumstances." *Id.* at 942. If a party did not expressly relinquish its right, then a court must examine the party's conduct to determine whether that party intended to relinquish the right in question. The intent to relinquish a right need not be express and "may be implied from action or inaction." *K & T, Inc. v. Koroulis*, 888 P.2d 623, 628 (Utah 1994).

¶ 12 In this case, neither party alleges that an express waiver was made. Therefore, we must determine whether waiver can be "implied from action or inaction" on Continental's part, while keeping in mind that the basis of our inquiry rests upon whether the relinquishment was distinctly made.

¶ 13 In a number of contexts, the Utah Supreme Court has discussed the waiver of a party's right to rescind a contract. *See Dugan v. Jones*, 615 P.2d 1239, 1247 (Utah 1980) (stating, in context of misrepresentations made in real estate agreement, that "any delay on the part of the defrauded party, especially his remaining in possession of the property received by him under the contract, and dealing with it as his own, may constitute a waiver of the right to rescind the contract"); *Mecham v. Benson*, 590 P.2d 304, 308 (Utah 1979) ("A buyer [of real estate] may waive his right to rescind for fraud if he uses the property which was the subject of the sale after he discovered, or in the exercise of reasonable care should have discover-

---

6. Continental attempts to expand this rule by arguing that not only is an insurer permitted to rescind a contract that contains material misrepresentations, but that the contract is void ab initio. We disagree. The Utah Supreme Court noted in *Frailey v. McGarry*, 116 Utah 504, 211 P.2d 840 (1949), that " 'a contract induced by fraud, false representations, mistake, etc., is not void but only voidable, and it is entirely within the right of the injured party to affirm it or treat it as valid and subsisting.' " *Id.* at 845 (citation omitted). *See also Baldwin v. Burton*, 850 P.2d 1188, 1193 (Utah 1993) (favorably quoting *Frailey*). *Cf. Perkins v. Great–West Life Assurance Co.*, 814 P.2d 1125, 1130 (Utah Ct.App.1991) (explaining that insurer's reliance on applicant's misrepresentation permits insurer to disavow policy at its election, but only if insurer relied upon misrepresentation). Thus, under *Frailey*, Kingston's insurance policy was not void at its inception, as suggested by Continental. Rather, any material misrepresentation made on the application, if actually relied on to Continental's detriment, renders the policy merely voidable, not void. *See* 211 P.2d at 845. Therefore, even assuming that Kingston did falsely represent the age of the home on the policy application, Continental still had the right to treat the contract "as valid and subsisting." *Id.*

ed, the ground for rescission."); *Taylor v. Moore,* 87 Utah 493, 51 P.2d 222, 227 (1935) (stating that, in context of rescission of mortgage, " '[t]he rule is that where a party has been induced to enter into a contract by false and fraudulent representations, he may upon discovering the fraud rescind the contract; but the great weight of authority holds that if the party defrauded continues to receive benefits under the contract after he had become aware of the fraud, or if he otherwise conducts himself with respect to it as though it were a subsisting and binding engagement, he will be deemed to have affirmed the contract and waived his right to rescind' ") (citation omitted); *Detroit Heating & Lighting Co. v. Stevens,* 16 Utah 177, 52 P. 379, 381 (1898) (stating that purchaser of defective hot-water heater waived his right to rescind contract and return heater because purchaser treated heater as his own and made repeated payments on purchase contract).

¶ 14 In the specific context of insurance, the Utah Supreme Court noted that if a party claims a right to rescission and then does any substantial act that recognizes the contract as in force, that party has usually waived its right to rescind. *See Farrington v. Granite State Fire Ins. Co.,* 120 Utah 109, 232 P.2d 754, 758 (1951). In *Farrington,* the plaintiff took insurance out on a building she described in the insurance application as "a building occupied as a skating rink," but which actually was a building with a partially collapsed roof and that was no longer used as a skating rink. *Id.* at 755. A fire destroyed the building and, within four days, the defendant insurance company had sent an agent to investigate the incident. *See id.* at 758. A month and a half later, the defendant company accepted the plaintiff's payment of the remaining balance owed on the premium. *See id.* Defendant insurer made no claim of a right to rescind the policy until approximately one year later, when the defendant denied liability, claiming a right to rescind based upon material misrepresentations made in the application. *See id.*

■ ¶ 15 While waiver of the defendant's right to rescind the policy was not ultimately the controlling issue in *Farrington,* the Utah Supreme Court nonetheless thought the

waiver claim merited careful analysis under the facts of the case. The Court thought it significant that "[a]ll of the facts upon which the defendant claims right of rescission were known to the defendant within a very few days of the fire," that the defendant accepted the plaintiff's premium payment, and that the defendant had allowed a great deal of time to pass without asserting a right to rescind the policy based on the facts it knew. *Id.* On such facts, our Supreme Court opined that

> [o]ne who claims a right to rescission must act with reasonable promptness, and if after such knowledge, he does any substantial act which recognizes the contract as in force, such as the acceptance of the more than half of the premium would be, such an act would usually constitute a waiver of his right to rescind.

*Id.* The Supreme Court's discussion of waiver in *Farrington* establishes that an insurer waives the right to rescind an insurance policy when that insurer has knowledge of facts that would give it the right to rescind the policy, and does not act promptly to assert or reserve the right to rescind the policy, or otherwise treats the policy as valid, such as by earning and collecting premiums. *See id.*

¶ 16 Consistent with the lessons of *Farrington,* other states have likewise precluded rescission if an insurer has acted, subsequent to a breach, in such a way as to recognize the insurance contract as in force. *See, e.g., McCollum v. Continental Cas. Co.,* 151 Ariz. 492, 728 P.2d 1242, 1245 (Ct.App.1986) ("When an insurer has knowledge of facts allegedly justifying a denial of coverage or the forfeiture of a policy previously issued, an unequivocal act that recognizes the continued existence of the policy or an act wholly inconsistent with a prior denial of coverage constitutes a waiver thereof."); *Johnson v. Life Ins. Co.,* 52 So.2d 813, 815 (Fla.1951) ("[I]t is equally well settled in insurance law that, when an insurer has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof."). Specifically, when an insurer accepts premiums after discovering facts that would justify re-

scission of the policy, numerous courts have precluded the insurer from later denying coverage. *See, e.g., Dairyland Ins. Co. v. Kammerer,* 213 Neb. 108, 327 N.W.2d 618, 620 (1982) (" 'Insurer is precluded from asserting a forfeiture where, after acquiring knowledge of the facts constituting a breach of condition, it has retained the unearned portion of the premium or has failed to return or tender it back with reasonable promptness[.]' ") (citation omitted); *Continental Ins. Co. v. Helmsley Enters., Inc.,* 211 A.D.2d 589, 622 N.Y.S.2d 20, 21 (N.Y.App. Div.1995) ("Where an insurer accepts premiums after learning of an event allowing for cancellation of the policy, the insurer has waived the right to cancel or rescind."); *McCollum,* 728 P.2d at 1245 (holding insurance company waived right to rescind when it had learned of fact justifying rescission but "retained and continued to accept premiums" from insured).

¶ 17 After careful review of the record, we conclude that the facts indicate an unequivocal intent on Continental's part to relinquish any right it had to deny coverage to Kingston, thus constituting waiver as a matter of law. Continental's course of conduct clearly demonstrated its intent to cover the losses on the home, regardless of the age of the home. At least as of July 11, 1997, if not earlier, Continental had knowledge that the home was over one hundred years old. Within days after the fire occurred, Continental sent agents to Kingston's home to assess the damage. A week after the fire, Fire Investigations, an agent of Continental, sent Continental a letter informing it that "[t]he home is over one hundred years old."

¶ 18 Notwithstanding this knowledge, and without being enough concerned about the home's age to check its records to make sure this was the risk it had underwritten, *see infra* note 7, Continental or its agents paid for Kingston's living expenses, informed Kingston that his loss was covered, authorized demolition of the home's interior, undertook repairs to restore the home, obtained commitments from two contractors to do restoration work, authorized restoration work to commence on the home at Continental's expense, and required Kingston to prepare an extensive personal property inventory to establish the amount of personal property loss. Additionally, during this time, Continental never evinced an attitude that its insurance of a home of this age would in any way be exceptional, never informed Kingston that the age of the home was a concern, and never suggested that it was going to consider rescinding the policy based on the age of the home. Under the totality of the circumstances, these acts inarguably demonstrate a distinct intent on Continental's part to continue Kingston's policy and to cover his losses without regard to the age of the home.

¶ 19 Continental asserts that it did not discover the discrepancy between the age of the home as listed on the application and the actual age of the home until January 1998, when it finally pulled the application and reviewed it.[7] Therefore, Continental insists, any acts performed prior to that time should not be considered as evidence of its intent to continue the policy rather than rescind it. As indicated, we have our doubts about the materiality of the discrepancy. *See supra* note 7. But even if Continental was not

7. The thrust of Continental's argument in its motion for summary judgment and again on appeal is that the age of a home, apparently without regard to the timing or extent of refurbishment, is material to an insurer's decision whether to insure that home. Thus, Continental asserts, because Kingston's application lists the wrong year as the year of the home's construction, a material misrepresentation was made. However, the fact that Continental waited until six months after it knew that Kingston's home was over 100 years old to pull the policy application undercuts the force of its materiality argument. If the age of the home is as material as Continental insists it is, it is peculiar that Continental would wait so long to pull the very document that disclosed the home's age. We are also not convinced, on the issue of materiality, that a home that was substantially refurbished in 1990 would be treated differently, as an underwriting matter, from a home built in 1990.

Seen from another perspective, if it were extraordinary for Continental to insure homes as old as this one, it is peculiar indeed that it did not immediately review its records to see how such a decision contrary to its corporate policy had been made. The matter-of-fact way in which it greeted the information that the home was over 100 years old suggests that the age of the home was not actually of great concern, i.e., was not material.

charged with knowledge of the discrepancy until January of 1998, it continued to bill Kingston for premiums even after it discovered the discrepancy and accepted a premium payment made by Kingston in February of 1998. We believe these acts indicate Continental's intention to continue the policy, despite the contents of the application. *See* 44A Am.Jur.2d *Insurance* § 1606 (2003) ("An insurer waives its right to seek rescission of a policy when it knowingly accepts premium payments following the discovery of alleged misrepresentations upon which it claims to have relied when it issued the policy[.]"); *id.* at § 1613 ("Acceptance of premiums by the insurer after learning of a breach of condition or a ground for forfeiture normally constitutes waiver or estoppel of the condition.").

¶ 20 Finally, Continental's argument that because it sent a reservation of rights letter it expressly reserved all rights to rescind the policy is not persuasive. The letter was not sent until March of 1998, subsequent to the acts mentioned above and eight months after the fire. Nevertheless, our conclusion in this case should not be taken in any way to undermine the ability of an insurance company to properly employ a reservation of rights letter in handling insurance claims.[8]

## CONCLUSION

¶ 21 A contract containing material misrepresentations is voidable at the election of the injured party. Thus, any material misrepresentations made on Kingston's insurance policy application rendered the policy voidable instead of void ab initio.

¶ 22 As conclusively shown by its postfire course of conduct, Continental intentionally relinquished its right to rescind the contract. As a result, whether a misrepresentation was made by Kingston on the policy application and whether the misrepresentation was material have no bearing on this case and, therefore, the trial court erred in granting summary judgment in favor of Continental. We reverse the decision of the trial court and remand for further proceedings consistent with this opinion.[9]

¶ 23 WE CONCUR: PAMELA T. GREENWOOD and WILLIAM A. THORNE, JR., Judges.

---

**8.** Had Continental sent Kingston its reservation of rights letter immediately following the fire, or at least right after it learned the true age of the home, we would have a very different case. Such a letter would indicate that the insurer would continue to reimburse Kingston's ongoing expenses as though they were covered under the policy, but with a full reservation of its right to deny coverage if its further investigation showed its entitlement to deny coverage.

**9.** We refrain from directing the trial court to grant Kingston's motion for partial summary judgment for procedural reasons. As explained in paragraph 5 of this opinion, after the trial court's initial denial of both sides' motions for summary judgment, additional discovery ensued, the record was better developed, and Continental then filed a new motion for summary judgment.

Kingston did not renew his motion for partial summary judgment but only opposed Continental's motion. Although Kingston claims error in the trial court's denial of his motion for partial summary judgment, we cannot say on the state of the record as it then existed that Kingston was entitled to partial summary judgment. And after the record became more fully developed, Kingston did not file a new motion for partial summary judgment.

We also note on April 4, 2003, Continental sent Kingston a letter informing him that it was voiding his policy and refunding all premium payments made from the inception of Kingston's policy. The whereabouts of the refund proceeds is unclear. Suffice it to say, Kingston cannot both retain the refunded payments and continue to receive benefits under the policy.