2021 UT App 80

## THE UTAH COURT OF APPEALS

WRIGHT W. THURSTON, ET AL.,[1]
Appellants,
*v.*
BLOCK UNITED LLC, ET AL.,
Appellees.

Opinion
No. 20200258-CA
Filed July 22, 2021

Fourth District Court, Provo Department
The Honorable Christine S. Johnson
No. 190400207

B. Ray Zoll, Chad C. Shattuck, and Jared W. Moss,
Attorneys for Appellants

Evan S. Strassberg and Steven J. Joffee,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

MORTENSEN, Judge:

¶1      Within days of the filing of the underlying lawsuit,
Wright W. Thurston and Block United LLC (Block United)[2]

---

1. The parties on appeal include other parties whose names we have not listed here but who appear on the notice of appeal or have otherwise entered appearances in this court.

2. The named appellants and appellees in this case are numerous. For ease of reference, we refer to the appellants collectively through reference to Thurston, and we refer to the

(continued…)

entered into a settlement agreement resolving the lawsuit. Block United quickly held up its end of the deal, which included transferring money and other assets to Thurston. Thurston, however, refused to comply with his principal obligation—signing and filing papers to dismiss the lawsuit—apparently out of belief that certain individuals made material misrepresentations during settlement negotiations. Nearly six months after the settlement agreement was reached, Thurston filed an amended complaint with the aim of adding causes of action for these alleged misrepresentations. Days after the amended complaint was filed, Block United filed a motion to enforce the settlement agreement.

¶2      The district court granted Block United's motion to enforce the settlement agreement, finding that the settlement agreement was binding and that Thurston had waived any right to rescind the agreement regardless of any alleged fraudulent misrepresentations. In granting the motion to enforce, the district court dismissed the amended complaint in its entirety with prejudice. Thurston appeals. We affirm.

BACKGROUND

¶3      Thurston formed Block United in April 2017. Block United was a manager-managed LLC, and Thurston was one of the company's two managers. By July 2018, Thurston and the other manager were deadlocked on Block United's management

---

(…continued)
appellees collectively through reference to Block United. In addition, two different lawsuits were filed below which were eventually consolidated. In this opinion, we refer to the underlying cases, complaints, and the like in the singular, as the distinction between the two cases and their filings are immaterial to the resolution of this appeal.

and operation, which ultimately led to Thurston withdrawing from daily participation in the company.

¶4     Thurston later filed the underlying lawsuit in early February 2019. As a general matter, Thurston alleged that after he had withdrawn from daily participation, Block United concealed material information about its functions and costs, misstated accounting records, converted its assets to other companies, and engaged in defamatory conduct. The complaint included claims for breach of contract, conversion, breach of fiduciary duties, and dissolution of the LLC, among others.

¶5     On February 20, 2019, the parties reached a settlement agreement during formal mediation. And like any other garden-variety settlement agreement, the crux of the agreement was that Block United would pay Thurston specified sums of money and other assets in exchange for Thurston agreeing to sign and file dismissal papers and to release Block United from liability. Block United substantially complied with its obligations under the settlement agreement within a few weeks, including transferring to Thurston all the money and assets specified.

¶6     Thurston, however, continually declined to sign the required dismissal and release papers. Initially, Thurston appeared to premise his delay on being too busy to review the dismissal papers or on assertions that he otherwise needed more or updated information from Block United. But in June 2019, Thurston asserted that Block United "made several misrepresentations during settlement" about its liabilities, assets, and ongoing business obligations, which purportedly "induced [Thurston] into settlement." And in response to Block United threatening to file a motion to enforce the settlement agreement, Thurston stated his belief that, based on these alleged misrepresentations, any such motion would be "meritless and result in costly litigation." He asserted, instead, that their "collective efforts [we]re better spent resolving the outstanding

issues."[3] Thurston thus asked Block United to engage in a second round of mediation to deal with the "outstanding issues," to which Block United agreed. This second round of mediation was scheduled for August 22, 2019.

¶7 But on August 19, 2019, Thurston instead filed an amended complaint[4] and canceled the mediation. The aim of this amended complaint was to include new claims seeking redress for the fraudulent misrepresentations allegedly made during the mediation. As to these additional claims, the amended complaint reads:

> 107. Further, [Block United] made material misrepresentations regarding the accounting, taxes, liabilities, use of [Block United] proceeds to invest in other companies or for [Block United's] personal benefit, filing of unlawful lien by [a third party] against [Block United]-owned real estate, and [Block United's] intent to no longer operate any blockchain mining facility in the mediation held with [Thurston].
>
> 108. [Thurston] relied on [Block United's] misrepresentations in entering into a conditional settlement agreement in mediation, and [Block United] knew [its] representations were false and have not corrected such misrepresentations.

---

3. Those "outstanding issues" ran the gamut: from asking Block United to provide corrected tax returns, to asking the "Block United team" to "admit in writing" that they lied to customers and "misuse[d]" their funds.

4. The amended complaint was timely. Block United stipulated to several extensions of the deadline to amend pleadings, which Thurston stated were necessary to "allow" him to "hopefully finalize settlement."

109. [Thurston] request[s] the Court to declare the conditional settlement agreement void or voidable, and to award damages against [Block United], plus attorneys' fees and costs.

¶8 On August 30, 2019, Block United filed a motion to enforce the settlement agreement. In its motion, Block United simply asserted that the settlement agreement was binding and that it had tendered and Thurston had "accepted all the consideration and performance" due under the settlement agreement, but that Thurston nevertheless refused to live up to his side of the agreement and sign the dismissal papers. Block United thus requested that the court enforce the settlement agreement.

¶9 Thurston responded by arguing that the settlement agreement should be rescinded on the ground that Block United "fraudulently procured" the agreement based on various "false representations and omissions during mediation." (Cleaned up.) Thurston then went on to detail numerous instances of these alleged fraudulent misrepresentations. As one example, Thurston alleged that Block United understated its liabilities because, during the mediation, Block United stated that it had not paid Rocky Mountain Power for only two months leading up to the February 2019 mediation, but Thurston "later learned" that Block United "failed to pay Rocky Mountain Power since August 2018 and had an unpaid balance of more than $1,190,189.37 as of the date of mediation."

¶10 In reply, Block United argued that the settlement agreement should be enforced irrespective of any of Thurston's arguments to the contrary because Thurston had waived the right to rescind the agreement by retaining the money and assets he had received under the agreement. In addition, Block United went on to explain that "even if the [c]ourt were to consider the merits" of Thurston's arguments, they should be rejected because the "allegations of fraud [were] baseless and, in many cases, demonstrably false." Among other things, Block United

asserted that Thurston "allege[d] that the [settlement agreement] should be invalidated because [Block United] allegedly did not disclose certain liabilities to [him] before the mediation when, in fact, the very documents [Thurston] use[d] to support [his] assertions were produced to [him] before the mediation." Block United then proceeded to refute each allegation, and in many instances showed that the relevant documents were in fact provided to Thurston in advance of the mediation. As just one example, Block United demonstrated that a Rocky Mountain Power invoice reflecting "the exact amount that [Thurston] now contend[s] [Block United] concealed" was in fact provided in advance of the mediation.

¶11   Subsequently, the court held oral arguments on the motion. There, the court asked Thurston why, if his intention was to rescind the settlement agreement, he had "kept all the money . . . paid as part of" that same agreement. Thurston answered that, "unless the court order[ed] otherwise," his intention was to keep the proceeds he received under the settlement agreement because it "was never [Block United's] in the first place" and was instead "always [his]." The court then discussed the holdings of several cases that, it explained, reflect the notion that "an aggrieved party can't have his cake and eat it too. He has to decide if he wants to set aside the contract as void and then return the benefits or if he wants to accept those benefits and sue." And because Thurston had retained the proceeds received under the settlement agreement, the court determined that he had waived the right to rescind the agreement. In response to this ruling, Thurston remarked,

> Point of record, Your Honor? . . . To be clear, Your Honor, there is [an] amended complaint[] . . . which, I think goes exactly with the case law that the Court just cited with respect to keeping the proceeds and going after damages. Our amended complaint[] cite[s] exactly that allegation. . . . [We] have kept the proceeds and are seeking damages. And [we are] enforcing that right to sue here.

That's the only reason we ask the Court to void is when they brought the motion to enforce. We have to oppose it. But we have never waived our complaints. So I just want to, I don't know if that'll persuade Your Honor?

¶12 The court responded that it "appreciate[d] the . . . point," but did not "find it terribly persuasive" because there was not "a basis for fraud in the first place given that the documents that were submitted in the reply brief indicate[d] . . . that all of that information was put forward as part of the mediation." The court specifically referenced the Rocky Mountain Power invoice and remarked, "I could go through the rest of the allegations here, but the exhibits in the reply brief are really the same. . . . There's amounts given that are claimed to be examples of fraud and yet the amounts correspond to documents that were submitted to [Thurston] as part of the mediation." Therefore, in granting the motion to enforce, the court dismissed with prejudice "all claims" asserted in the amended complaint. Thurston appeals.

## ISSUE AND STANDARD OF REVIEW

¶13 Thurston contends that the district court erred by enforcing the settlement agreement. We review the district court's enforcement of the settlement agreement for abuse of discretion. *McKelvey v. Hamilton*, 2009 UT App 126, ¶ 17, 211 P.3d 390.[5]

---

5. Thurston also argues that the district court erred "by failing to hold an evidentiary hearing." But he never requested an evidentiary hearing below, instead only "request[ing] a hearing for *oral argument* on th[e] motion." (Emphasis added.) Thurston thus failed to preserve the issue and has "not argued that the plain error doctrine or any other exception to the preservation

(continued…)

ANALYSIS

¶14  Thurston challenges the district court's order on two related grounds. First, he argues that the district court erred in concluding that he waived his right to rescind the settlement agreement by keeping the proceeds received thereunder. Second, he argues that, even if the district court did not err in concluding that he waived the right to rescind the settlement agreement, it still erred by dismissing the new claims pleaded in the amended complaint because these claims can "exist even with the settlement agreement in place."

¶15  "It is quite well established that a settlement agreement may be summarily enforced by motion in the court of the original action." *Tracy-Collins Bank & Trust Co. v. Travelstead*, 592 P.2d 605, 607 (Utah 1979). However, the "power to enter a judgment enforcing a settlement agreement" is contingent on the agreement constituting "an enforceable contract." *Badger v. MacGillivray*, 2016 UT App 109, ¶ 2, 374 P.3d 1053 (cleaned up). So, "basic contract principles affect the determination of when a settlement agreement should be so enforced." *ACC Cap. Corp. v. Ace West Foam Inc.*, 2018 UT App 36, ¶ 12, 420 P.3d 44 (cleaned up).

¶16  And under Utah contract law, a party who has been induced to enter a contract by fraudulent misrepresentations has two options: (1) it may elect to rescind the contract or (2) it may affirm the contract. *See Dugan v. Jones*, 615 P.2d 1239, 1247 (Utah 1980), *superseded on other grounds by rule as recognized in Arnold v. Curtis*, 846 P.2d 1307 (Utah 1993); *see also Brown v. Richards*, 840 P.2d 143, 150 (Utah Ct. App. 1992) (noting the availability of these same two options). In either instance, the defrauded party may recover damages associated with the fraud. *See Ong Int'l*

---

(…continued)

rule applies." *In re Koller*, 2018 UT App 27, ¶ 14, 424 P.3d 926. As a result, we do not further address this issue.

*(U.S.A.) Inc. v. 11th Avenue Corp.*, 850 P.2d 447, 457 (Utah 1993) (explaining that "monetary and punitive damages" are compensable rescissionary damages); *Conder v. A.L. Williams & Assocs.*, 739 P.2d 634, 639 (Utah Ct. App. 1987) (explaining that a party who affirms the contract may sue for damages thereon).

¶17 However, a party waives the option of rescission if it fails to "move promptly and with all reasonable diligence to disaffirm the contract upon discovery of the fraud." *See Taylor v. Moore*, 51 P.2d 222, 226 (Utah 1935); *see also Continental Ins. Co. v. Kingston*, 2005 UT App 233, ¶¶ 9, 11, 114 P.3d 1158 (noting that the defrauded party waives the right to rescind if "from action or inaction" its "course of conduct demonstrates that it intended to relinquish that right" (cleaned up)); *Ockey v. Lehmer*, 2008 UT 37, ¶ 31, 189 P.3d 51 ("Ockey's failure to object to the 1994 conveyance constitutes ratification—either consciously or through willful ignorance—of the actions taken on his behalf."). The rationale is grounded in the notion that "[t]he party deceived is not allowed to go on deriving all possible benefit from the transaction, and then claim to be relieved from his own obligations by seeking its rescission." *Taylor*, 51 P.2d at 227 (cleaned up); *see also Ockey*, 2008 UT 37, ¶ 32 ("It is well established in our case law that an individual cannot go along with a contract for the purpose of enjoying benefits . . . only to later claim a right to rescind . . . ." (cleaned up)).

¶18 Here, the district court concluded that Thurston waived the option to rescind the settlement agreement because he retained the proceeds received under that agreement. And to this very point, we have repeatedly explained that a party who fails to promptly return proceeds received under a contract waives the right to rescind that contract. *See Perry v. Woodall*, 438 P.2d 813, 815 (Utah 1968) ("If he continues to treat the property as his own the right of rescission is gone, and the party will be held bound by the contract."); *Taylor*, 51 P.2d at 227 ("If the party defrauded continues to receive benefits under the contract after he has become aware of the fraud . . . he will be deemed to have affirmed the contract and waived his right to rescind." (cleaned

up)); *cf. Kingston*, 2005 UT App 233, ¶ 16 ("[W]hen an insurer accepts premiums after discovering facts that would justify rescission of the policy, numerous courts have precluded the insurer from later denying coverage.").

¶19 Thurston tacitly acknowledges the district court's rationale and supporting authority, asserting that "[m]aintaining possession of the property *may* constitute a waiver of the right to rescind the contract." (Emphasis added.) Nevertheless, he argues that the district court "overlooked" other evidence in the record tending to show his "intent" to pursue rescission. Specifically, Thurston refers to the various post-settlement correspondence to Block United in which he referenced fraudulent misrepresentations, along with his eventual filing of the amended complaint and its request for rescission, and asserts that these facts demonstrated his intent to rescind the agreement.

¶20 We are not persuaded by Thurston's attempt to simply gloss over our case law and the district court's resultant ruling that, because he retained the proceeds under the settlement agreement, he waived his right to rescind it. Both below and on appeal, there was no dispute that Thurston retained the settlement proceeds, and our case law is clear that this supports a determination of waiver. Moreover, the same evidence to which Thurston otherwise refers further supports the district court's determination. For example, even in his June communications, Thurston was still representing that his intention was to "finalize settlement." *See supra* note 4; *see also Frailey v. McGarry*, 211 P.2d 840, 845 (Utah 1949) ("[T]he party is entitled to a reasonable time in which to decide upon the course he will take. But this does not mean that he will be indulged in a vacillating or hesitating course of conduct . . . ."). Likewise, waiting nearly six months to file an amended complaint further supported the district court's ruling. *See Frailey*, 211 P.2d at 845 ("For almost a year plaintiff [vacillated] between reliance on the contract, obtaining a modified contract, abandonment of the contract and finally rescission."). We therefore conclude that the

court did not abuse its discretion in determining that Thurston had waived his right to rescind the settlement agreement.

¶21 And this leads us to Thurston's other argument, which relates to a defrauded party's option to affirm the contract. He maintains that, even if the district court did not err by enforcing the settlement agreement, it nevertheless erred by dismissing the case outright. Specifically, he asserts that the fraud claims added in the amended complaint "evidenced" his "intent" to affirm the settlement agreement and sue for damages thereon, and thus these claims should not have been dismissed.

¶22 We disagree. While a claim pleaded to affirm the settlement agreement and recover damages thereon would presumptively survive the enforcement of the agreement, the fraud claims pleaded in the amended complaint do not take this form. *See* Utah R. Civ. P. 8(a) (directing that "[a]n original claim . . . must contain a short and plain . . . demand for judgment for specified relief," including any relief requested "in the alternative").[6] In the amended complaint, Thurston specifically asked only for the court to "declare the conditional settlement agreement void or voidable, and to award damages" on that basis. As pleaded, "even under Utah's liberal notice pleading requirements," this fails to provide fair notice that Thurston was alternatively requesting that the settlement agreement be affirmed, or fair notice of any theory of damages that might result from affirming the settlement agreement. *See Asael Farr & Sons Co. v. Truck Ins. Exch.*, 2008 UT App 315, ¶ 17, 193 P.3d

---

6. We "may choose to affirm the judgment of the district court on any legal ground or theory apparent on the record." *Pentalon Constr., Inc. v. Rymark Props., LLC*, 2015 UT App 29, ¶ 25, 344 P.3d 180. And given that Thurston's argument quite literally relies on the allegations as pleaded in the amended complaint, and Block United has argued the pleading deficiencies on appeal, the ground for our ruling is indeed apparent in the record.

650 (cleaned up). So, no claims pleaded should have survived the enforcement of the settlement agreement and, therefore, the district court did not err by dismissing the case outright in its order granting the motion to enforce.[7]

## CONCLUSION

¶23   We affirm the district court's enforcement of the settlement agreement and dismissal of the amended complaint in its entirety. We remand for the limited purpose of calculating Block United's reasonable attorney fees incurred on appeal.

———————

7. Block United also requests costs and attorney fees incurred on appeal. The settlement agreement provides, "The parties agree that in any dispute arising out of or relating in any respect to the final settlement agreement, the prevailing party shall be entitled to attorney's fees." Because Block United has prevailed on appeal, we grant the request for reasonable attorney fees incurred on appeal.